### COFFEE POT HOLDING CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9458.

Circuit Court of Appeals, Fifth Circuit.

July 8, 1940.

416

Geo. E. H. Goodner, of Washington, D. C., for petitioner.

Joseph M. Jones and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and J. W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals holding petitioner liable, as transferee, for jeopardy assessments of income tax, in the sum of approximately $330,000, owed by C. Perry Snell, the transferor. The Commissioner contended that Snell transferred substantially all of his assets, of a value greatly in excess of his tax liability, to the petitioner for an inadequate consideration, much too small to satisfy his tax debt. Petitioner argued that it could not be required to pay, as transferee, because no attempt had been made to collect from Snell; because Snell was not proved to be insolvent, but in fact was solvent; and because the transfer was made for a valid consideration.

On May 20, 1931, Snell was a creditor of Snell Isle, Inc., and owned the controlling interest in the stock of it and of C. Perry Snell, Inc. The book value of these assets was $6,281,793.83. He was indebted to one Fothergill, a business associate, relative, and lifelong friend, for approximately $50,000, for money lent over a thirty-year period; he owed delinquent income taxes, was contingently liable as endorser on several outstanding notes, was threatened with several suits, and owed other obligations. To preserve his estate and satisfy only his incurred obligations, Snell made an agreement with Fothergill under the terms of which the latter organized the petitioner corporation as a holding company for the above-described assets. One hundred shares of capital stock of the par value of $50,000 were issued, of which Fothergill acquired all save two qualifying shares for $50,000. The consideration to Snell for the transfer of the property was the $50,000 paid by Fothergill for the stock, and an agreement whereby Snell should receive 50% of the profits of the corporation. The $50,000 was paid by crediting Snell's debt to Fothergill, and no

cash actually changed hands. The indebtedness owed by Snell Isle, Inc., to Snell was evidenced by twelve notes of an aggregate value in excess of $1,100,000, secured by a mortgage on real estate worth more than $500,000. Three of them, each of a face value of $100,000, were transferred to petitioner as trustee for the benefit of the United States to satisfy the delinquent income-tax liability of Snell when the amount thereof was finally determined.

The transferee liability is founded upon Section 280 of Chapter 27 of the Revenue Act of 1926, 44 Stat. 61, 26 U.S.C.A.Int. Rev.Acts, pages 212, 213, which authorizes the collection, from the transferee of property of the taxpayer, by summary proceedings, of taxes owed by the transferor, to the extent of the transferee's liability therefor, either at law or in equity. It is claimed that the liability which brings petitioner within the statute was the failure to pay an adequate consideration for the transfer of the property;[1] therefore, we consider first the question of the validity of the consideration paid.

The actual value of the securities transferred was not proved, but the value placed thereon by petitioner's books was almost $6,000,000, after deducting the full value of the securities conditionally transferred. In payment therefor, Snell received a credit of $50,000 on his debt to Fothergill (which was not enforceable at law), and a right to 50% of the profits derived from the sale or management of the property. It is readily apparent that Snell received no immediate return for the transfer, and any future return was contingent upon the realization of a profit from the disposition of the property. He parted with over $6,000,000 worth of assets, which, so far as the record shows, could be disposed of for $6,000,000 by the transferee without paying one cent of the proceeds to Snell. In these circumstances, the only reasonable inference fairly to be drawn from these facts is that the transfer was not made for a valuable consideration.[2]

Petitioner argues that these transfers did not render Snell insolvent; that the evidence before the Board clearly showed him to be responsible for this obligation; and that, under such circumstances, the Commissioner had no right to proceed against it, but should have enforced the payment from Snell. We do not agree that Snell was shown to be solvent. Counsel for petitioner, when stating his case, declared that Snell turned over all of his assets to petitioner. Fothergill, in his testimony at the hearing, stated that Snell sold all of his interests to petitioner. He later amended this testimony by saying that Snell had some assets which were shown on the books of the company, consisting of a claim for interest against Snell Isle, Inc., and the claim for 50% of the profits derived from petitioner's operations. Snell had nothing to evidence his claim for interest, and, at most, his claim for future profits was contingent. It is also true that, if he had retained sufficient assets to satisfy his $330,000 tax obligation, he would have substantially defeated his avowed purpose of making the transfer. The record contains substantial evidence supporting the finding by the Board that Snell had transferred substantially all of his assets for a consideration insufficient to satisfy his tax obligation.

The Commissioner was not required to have an execution issued and returned nulla bona before pursuing the petitioner on this claim. The law does not require doing a vain and useless thing, and, as the Board properly found that the transfer of these assets by Snell to petitioner rendered him insolvent to the extent that his tax deficiency could not be satisfied by a levy against him, the Commissioner acted within his rights in directly proceeding against the transferee.[3] It is even true that the Commissioner, in the absence of insolvency, has the right to enforce the claim against the transferee without first attempting to collect the tax from the transferor. Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138; American Equitable Ass'n v. Helvering, 2 Cir., 68 F.2d 46; Helvering v. Wheeling Mold & Foundry Co., 4 Cir., 71 F.2d 749.

Under the clauses of the act providing therefor, all jeopardy assessments necessarily are levied in the exercise of the sound discretion of the Commissioner. There is no evidence showing the levy in this case to be an abuse of that discretion. The decision of the Board of Tax Appeals is affirmed.

---

[1] Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138; Irvine v. Helvering, 8 Cir., 99 F.2d 265.

[2] Commissioner v. Horseshoe Lease Syndicate, 5 Cir., 110 F.2d 748; 12 Am. Jur., 616, 617.

[3] Hatch v. Morosco Holding Co., supra.