WLADYSLAW SZTRAMSKI & another *vs.* JAMES S. SPINALE & others.

Essex. December 8, 1954. — April 7, 1955.

Present: QUA, C.J., RONAN, WILKINS, & WILLIAMS, JJ.

*Fraudulent Conveyance. Equity Jurisdiction,* Fraudulent conveyance, Other remedy. *Contract,* Building contract, Parties. *Agency,* What constitutes. *Husband and Wife,* Agency of spouse. *Tenants by the Entirety. Real Property,* Tenancy by the entirety. *Trustee Process. Equity Pleading and Practice,* Trustee process, Parties.

Under G. L. (Ter. Ed.) c. 109A, § 7, a conveyance of property by a debtor with actual intent to hinder, delay and defraud creditors was fraudulent without proof that he was insolvent when he made the conveyance. [503]

That the plaintiff in a suit in equity under G. L. (Ter. Ed.) c. 214, § 3 (9), to reach and apply property fraudulently conveyed by a debtor might have an adequate remedy at law was immaterial. [503]

Evidence would justify a finding that a wife authorized or ratified acts done by her husband in her behalf as well as for himself in procuring construction of a house on land owned by them as tenants by the entirety, and was a party to the construction contract. [503–504]

In a suit in equity wherein the plaintiff by special precept in trustee process attached funds of the defendant in two banks not made parties to the suit nor referred to in the pleadings, provisions in the final decree ordering the banks to pay such funds to the plaintiff, to be credited to the defendant, should be struck out and the plaintiff left to proceed against the banks as trustees in accordance with the applicable statutes. [502, 504]

CONTRACT. Writ in the Superior Court dated May 10, 1950.

Following amendment of the action into a suit in equity, the suit was heard by *Beaudreau*, J.

*Joseph G. Kelly,* (*Samuel A. Valenti* with him,) for the defendants.

*Harry A. Simon,* for the plaintiffs.

WILLIAMS, J. This was originally an action in contract on an account annexed to recover for work and materials furnished by the plaintiffs in the construction of a single family house for the defendants James S. Spinale and Sarah Spinale on their land in Melrose. The action was later amended into a suit in equity in order to reach and apply in payment of the said defendants' indebtedness the land on which the house was erected, which land, it was alleged, had been conveyed to one Salvatore Spinale in fraud of creditors. Salvatore was joined as a party defendant. James S. and Sarah Spinale, who will hereinafter be referred to as the defendants, made answer by way of general denial and set up a counterclaim for damages caused by the plaintiffs' alleged improper work.

The evidence is reported and the judge has made findings substantially as follows. The plaintiffs are general contractors and in June, 1949, agreed with the defendants, who are husband and wife, to build for them a dwelling on land owned by them as tenants by the entirety at 118 Waverly Avenue in Melrose. The defendants were to pay for all labor and materials furnished by the plaintiffs with a profit of five per cent based upon the costs together with the cost of workmen's compensation insurance and other insurance, including so called payroll taxes. Ninety per cent of the amounts becoming due were to be paid as the work progressed. It was understood that the defendants might contract with parties other than the plaintiffs for such part of the work as they desired to "subcontract." The plaintiffs began work in August and continued until April, 1950. On September 27, 1949, the defendants paid on account of the work performed the sum of $5,000. In the following April the plaintiffs requested a further payment of $3,000. James Spinale on behalf of himself and his wife replied that he was "overboard"; that he could not pay the plaintiffs; and that he was content to have the plaintiffs take over the

house, in which event he would be willing to suffer a loss of $500. This proposal was not accepted by the plaintiffs and they discontinued work on the house. On May 8, 1950, there were registered at the same time in the Land Court a quitclaim deed of the said land from the defendants to one Jean M. Duncan, a straw, a quitclaim deed from Jean M. Duncan to Sarah Spinale, and a mortgage for $8,000 payable in sixteen years from Sarah Spinale to one Salvatore Spinale, a brother of her husband James. In this mortgage James released all of his interest in the premises. On May 10 a quitclaim deed of the land from Sarah to Salvatore in which James joined to release his interest was registered. On or about October 5, 1950, the defendants procured a sale of the property by Salvatore to Joseph V. Dinarello and wife, from which sale the defendants received the proceeds. The deed and a discharge of the $8,000 mortgage by Salvatore were registered on October 5, 1950. The judge found that these conveyances were made with actual intent on the part of the defendants to hinder and delay the plaintiffs to whom at that time the defendants owed $3,905.18; and that the defendants were financially solvent and able to pay the plaintiffs this amount. He also found that the plaintiffs had performed their work in a workmanlike manner and in April were justified in discontinuing further work on the house which then had practically been completed. It appears from the record that the plaintiffs by special precept dated May 13, 1953, trusteed funds of the defendants in Suffolk Savings Bank for Seamen and Others and The Boston Five Cents Savings Bank, and that these banks answered funds in the respective amounts of $2,388.91 and $1,993.02.

A final decree was entered adjudging that the defendants were indebted to the plaintiffs in the sum of $3,905.18 with interest to the date of the decree amounting to $888.37, a total of $4,793.55, which amount the defendants were ordered to pay. The two banks were ordered to pay the respective amounts, which their answers had disclosed, such funds when paid to be credited to the defendants. As to

Salvatore the bill was dismissed. From this decree the defendants appealed.

Except as to their contention that Sarah Spinale could not properly be found to be a party to the contract their assertions of error require little discussion. The evidence was adequate to support the findings of the judge as to the terms of the contract; that the work had been performed in a workmanlike manner; that the defendants owed the plaintiffs the amount found to be due; and that in April, 1950, the plaintiffs had been justified in refusing to perform further work. As James admitted in his testimony that the conveyances, hereinbefore referred to, had been arranged to prevent the plaintiffs from attaching the property, there was ample evidence of an actual intent to hinder, delay, and defraud the plaintiffs. In view of such intent it was not necessary for the plaintiffs to prove that at the time of these conveyances the defendants were insolvent. G. L. (Ter. Ed.) c. 109A, § 7. *Woodbury* v. *Sparrell Print,* 187 Mass. 426, 428. *Themo* v. *Themo,* 296 Mass. 190, 192. *Joseph P. Manning Co.* v. *Shinopoulos,* 317 Mass. 97, 99. *David* v. *Zilah,* 325 Mass. 252, 256. It is immaterial that the plaintiffs might have had an adequate remedy at law. General Laws (Ter. Ed.) c. 214, § 3 (9), expressly provides a remedy in equity for parties in the position of the plaintiffs. *Stratton* v. *Hernon,* 154 Mass. 310, 312. *Bress* v. *Gersinovitch,* 231 Mass. 563, 565.

Although Mrs. Spinale could not be found responsible to the plaintiffs merely because she was the wife of the person who negotiated for the construction of the house, her relationship to that person and her interest in the property were important factors in the determination of her knowledge of and acquiescence in the acts of her husband. The question of the agency of a husband and wife is usually a question of fact. Her participation in the transaction could be inferred from evidence that her husband was acting in her behalf and for her benefit as well as for his own and that upon learning of his conduct she adopted and ratified it. *Gordon* v. *O'Brien,* 320 Mass. 739, 741–742, and cases cited. Although as a

tenant by the entirety the husband was entitled to the exclusive possession and control of the premises, Mrs. Spinale was not prevented from exercising control by arrangement with him. She could appoint him her agent. *Collins* v. *Croteau,* 322 Mass. 291, 292. James testified that his wife knew that a house was to be built on the property which they jointly owned; that she knew he was negotiating with the Sztramskis; and that an architect made the plans for him and his wife. To a question on cross-examination, "Well, it was all right with her as far as you knew to talk for the both of you, for you and for her?" he answered, "To build a house." There was testimony by another witness that during the building of the house Mrs. Spinale at times visited the premises and took part in some of the talk with the plaintiffs respecting changes to be made in the construction. She was a party to the conveyances to which reference has been made. Although evidence had been introduced by the plaintiffs tending to show such participation by her in the matter of constructing the house, she did not take the witness stand, and the judge could infer that her testimony would not have supported the defendants' contention. *Mitchell* v. *Silverstein,* 323 Mass. 239, 240. *Murphy* v. *Moore,* 307 Mass. 163, 165.

In our opinion there was no reversible error in the decree. It should be modified, however, in one particular. The two savings banks were not parties to the suit and no allegations concerning them were made either in the bill or in the answer. Reference to them in the decree should be eliminated. The plaintiffs can proceed against them as trustees in accordance with the applicable statutes. See *Leffler* v. *Todd,* 316 Mass. 227; *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57, 67. As modified in this respect the final decree is affirmed with costs of the appeal.

*So ordered.*