UNITED STATES of America,
Plaintiff, Appellant,

v.

Genevieve RUSSELL et al., Defend-
ants, Appellees.

No. 5169.

United States Court of Appeals
First Circuit.

Feb. 27, 1957.

George F. Lynch, Attorney, Department of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and A. F. Prescott, Attorneys, Department of Justice, Washington, D. C., Joseph Mainelli, U. S. Atty., and Samuel S. Tanzi, Asst. U. S. Atty., Providence, R. I., were on brief, for appellant.

Christopher J. Brennan, Providence, R. I., with whom William S. Flynn, Providence, R. I., was on brief, for appellees.

Before WOODBURY and HARTIGAN, Circuit Judges, and FORD, District Judge.

FORD, District Judge.

On January 8, 1954, the United States brought an action against the defendants-appellees to collect taxes assessed against them under the provisions of Sec. 311 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 311 as transferees of real estate in Pawtucket, Rhode Island, owned by Annie and John Nasif against whom the taxes and penalties were originally assessed.

The facts as alleged in the complaint and found by the District Court are as follows:

On and prior to September 22, 1950, the taxpayer-transferors, Annie and John Nasif, husband and wife, were indebted to the United States in the amount of $14,574.38, plus interest, and Annie Nasif, individually, was indebted to the United States in the amount of $18,331.-98, plus interest, for taxes due for the years 1943 to 1946, although those taxes had not been formally assessed.

On and prior to September 22, 1950, the taxpayer-transferors were the owners of several parcels of real estate in the City of Pawtucket, Rhode Island, and the wife, Annie Nasif, was the owner of a parcel of real estate situated at 169 Woodbine Street in that city, where she and her husband resided. On that date, Annie Nasif conveyed by warranty deed to her daughter, the appellee Genevieve Russell, the Woodbine Street property, subject to an existing mortgage of record held by the Pawtucket Institution for Savings. The complaint alleged that the taxpayer-transferors were either insolvent at the time of the conveyance or were thereby rendered insolvent and unable to pay their tax indebtedness to the United States. It was further alleged that the transfer was made without full and adequate consideration for the purpose of avoiding and evading payment of the federal taxes.

On August 6, 1951, the United States caused a notice of tax lien to be filed in the office of the City Clerk of Pawtucket, Rhode Island, against the taxpayer-transferors for the total amount of the taxes plus interest which were timely assessed on the Commissioner's Assessment List of April 1951, which list was received by the District Director of Internal Revenue on May 7, 1951. Within ten days, the District Director gave notice and made demand of the taxpayer-transferors for payment of the taxes, but payment was refused.

On December 21, 1951, the United States instituted suit in the District Court for the District of Rhode Island (United States v. Nasif et al. (No. 1320)) wherein it sought to foreclose its tax lien against the taxpayer-transferors. The Pawtucket Institution for Savings and others were named as defendants in that action by virtue of Section 3678 of the Internal Revenue Code of 1939, 26 U. S.C.A. § 3678 upon the ground that they were claiming a lien upon the property sought to be sold. On June 8, 1953, an order was entered in that case authorizing and directing the bank to foreclose its mortgage. The Woodbine Street property was not included in the order. In July 1953, a timely jeopardy assessment was made against the defendants-transferees in the amount of $9,780.34. This assessment list was received by the

District Director on July 30, 1953, who, on the same date, gave notice and made demand upon the transferees for payment; the demand was not honored. On July 31, 1953, the Director filed a notice of tax lien against the transferees in the amount of the jeopardy assessment.

On March 15, 1954, the defendants herein moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. Before arguments were had on that motion, the United States filed, on June 15, 1955, what it described as an "Amended Complaint." This so-called Amended Complaint repeated the allegations contained in the original complaint and added the allegations (1) that on March 30, 1954, an order was entered in the case of United States v. Nasif, supra, declaring that Annie Nasif was indebted to the United States in the sum of $21,493.61, and that she and her husband were indebted to the United States for $17,088.49, both amounts including interest to March 30, 1954; (2) that on April 5, 1955, a writ of execution was issued in that action on which credit was noted for the payment made from the balance of the proceeds of the foreclosure sales paid into court; and (3) that on April 7, 1955, demand was made on Annie Nasif pursuant to the writ, but remained unsatisfied.

Subsequent to the filing of the "Amended Complaint," counsel for the parties agreed that the defendants' motion to dismiss should be deemed to have been directed against the so-called amended complaint as though filed subsequent thereto.

In support of the motion to dismiss it was the position of the defendants that the liability of a transferee is secondary rather than primary and the United States had failed to exhaust its remedies against the taxpayer-transferors before instituting the present action against the defendants-transferees.

The District Court entered an order allowing the motion to dismiss on the ground that the exhaustion of remedies was a condition precedent to the maintenance of the action and the United States had failed to exhaust its remedies against the transferors and also that the inclusion in the so-called amended complaint of events occurring subsequent to the institution of the action could not create a cause of action against the defendant-appellees which did not exist on January 8, 1954, the date the complaint was filed. We believe the District Court was in error; that a claim for relief had been stated.

It is true the liability of a transferee is secondary rather than primary, and all reasonably possible remedies against the taxpayer-transferor must first be exhausted in order to hold the transferee liable. Commissioner of Internal Revenue v. Oswego Falls Corp., 2 Cir., 71 F.2d 673, 676; Wire Wheel Corp. of America v. Commissioner, 16 B.T.A. 737; United States v. Garfunkel, D.C., 52 F.2d 727; Hatch v. Morosco Holding Co., Inc., 2 Cir., 50 F.2d 138.

However, this rule is not absolute. As stated in Hatch v. Morosco Holding Co., Inc., supra, 50 F.2d at page 140: "Ordinarily, a creditor must proceed to judgment against his debtor and have an execution returned nulla bona before he can pursue third persons on his claim. * * * But, where the debt is admitted * * * and it is apparent that a judgment and execution against the debtor would be futile * * *, the procedural requirement may be dispensed with." Impossibility dispenses with the requirement, as well as manifest futility. Coffee Pot Holding Corp. v. Commissioner, 5 Cir., 113 F.2d 415; Fairless v. Commissioner, 6 Cir., 67 F.2d 475, 477. See also United States v. Garfunkel, supra; United States v. Fairall, D.C., 16 F.2d 328.

The plaintiff's complaint before the so-called amended complaint was filed alleged the transferors-taxpayers were the owners of several parcels of real estate before and on September 22, 1950; that on September 22, 1950, they conveyed their properties to the defendants-appellees; that on this date the transferors were indebted to the United States for income taxes in the amount of $32,906.36;

that they transferred the property without adequate compensation for the purpose of evading payment of the taxes; that at the time of the conveyance the transferors were either insolvent or the making of the conveyance rendered the transferors *insolvent and unable to pay* their tax indebtedness to the United States. These allegations for the purpose of the motion to dismiss must be taken as true.

■■ If it were true that the transferors were insolvent and unable to pay the income taxes which were admittedly due, it would follow that to exhaust any further procedural requirement would be a "vain and useless thing." Coffee Pot Holding Co. v. Commissioner, supra [113 F.2d 417]. In that case there was a finding that the transferor-taxpayer transferred substantially all his assets for a consideration insufficient to satisfy his tax obligation and was rendered insolvent and the court held Commissioner was not required to have an execution issued and returned nulla bona before proceeding directly against the transferee. In the light of the allegations in the original complaint here and taken as true as they must be, it would have been a manifest futility to pursue the only remaining step the United States probably could reasonably have taken, i. e. to procure the return of an execution nulla bona. The instant case falls within the exception to the general rule of exhaustion of remedies.

There is a further aspect and support in the pleadings for the conclusion that the allowance of the motion to dismiss was improper when the original complaint is considered with the so-called amended complaint. The "amended complaint" alleged facts which occurred subsequent to the date the original complaint was filed, namely, that the United States obtained judgment against the taxpayer-transferors and a writ of execution was issued and returned unsatisfied.

■ This pleading filed by agreement and treated by the court in deciding the motion to dismiss was captioned "Amended Complaint" and regarded as such by counsel for both parties. The misnomer in the pleading is of no moment, Cf. Magee v. McNany, D.C., 10 F.R.D. 5; United States v. L. D. Caulk Co., D.C., 114 F.Supp. 939, 940. Rule 15(d), Fed. Rules Civ.Proc. 28 U.S.C.A. provides that the court may permit a party to serve a supplemental pleading setting forth transactions, occurrences or events which have happened since the date of the pleading sought to be supplemented. It stands with the original pleading and is a mere addition to, or continuation of, the original complaint or answer. It is designed to obtain relief *along the same lines,* pertaining to the same cause, and based on the same subject matter or claim for relief, as set out in the original complaint. Barron and Holtzoff, Federal Practice and Procedure, Vol. I, pp. 454, 455; Moore's Federal Practice, Vol. III, p. 857; Kimmel v. Yankee Lines, Inc., D.C., 125 F.Supp. 702; Maryland Casualty Co. v. Miami Transit Co., D.C., 96 F. Supp. 490; Berssenbrugge v. Luce Mfg. Co., D.C., 30 F.Supp. 101.

■ The so-called amended complaint was in fact a supplemental pleading within the meaning of Rule 15(d) and stated no new cause of action or claim for relief. Cf. Ebel v. Drum, D.C., 55 F.Supp. 186. The legal principles involved were the same as those in the original complaint and the additional allegations merely enlarged the facts set forth in the original complaint. It would follow that the so-called amended complaint did not relate back to the original complaint under the provision of Rule 15(c) and it was error for the court to so consider it.

The allegations in the Supplemental Pleading show conclusively that the United States exhausted its remedies against the taxpayer-transferors. The law does not force a creditor to impossibilities. With judgment against the transferors and the execution returned nulla bona, there were no remedies remaining. The ultimate procedure that reasonably could be taken had been exhausted before proceeding against the transferees. Hollins v. Brierfield Coal and Iron Co., 150 U.S. 371, 381, 14 S.Ct. 127, 37 L.Ed. 1113;

Benoit v. Commissioner, 1 Cir., 238 F.2d 485, 491; Hatch v. Morosco Holding Co., Inc., supra, 50 F.2d at page 140.

A judgment will be entered vacating the order of the District Court and remanding the case for further proceedings not inconsistent with this opinion.