## 1006

COCA-COLA BOTTLING COMPANY OF TUCSON, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84587.    Filed March 2, 1962.

*Scott P. Crampton, Esq.*, *Gerald Jones, Esq.*, and *A. O. Johnson, Esq.*, for the petitioner.

*James Q. Smith, Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined that petitioner is liable as a transferee of assets of Crystal Coca-Cola Bottling Co. (dissolved), Tucson, Arizona, for the following deficiencies (together with interest thereon) which he determined in the income and excess profits taxes of the last-named company:

| Taxable year | Taxes involved | Deficiency |
|---|---|---|
| 1951 | Income and excess profits taxes | $27,628.40 |
| 1952 | Income and excess profits taxes | 29,175.91 |
| 1953 | Income and excess profits taxes | 26,421.23 |
| 1954 | Income tax | 14,673.66 |
| 1/1 to 12/31/55 | Income tax | 19,158.26 |
| Total | | 117,057.46 |

The sole issue for decision is whether the petitioner is liable as such transferee.

All other issues raised by the pleadings have been eliminated.    The parties have filed a written agreement which specifies how the amounts of the determined deficiencies and the amount of petitioner's liability as transferee shall be adjusted and computed, if petitioner is held to be liable as such transferee.    Also, the petitioner has conceded on brief, that if petitioner is liable as such transferee, assessment against it of the amount of its liability as such transferee, is not barred by the statute of limitations.

### FINDINGS OF FACT.

Most of the facts have been stipulated.    The written and oral stipulations of fact, and all exhibits identified therein, are incorporated herein by reference.

The petitioner, Coca-Cola Bottling Company of Tucson, Inc., is an Arizona corporation which was incorporated on or about October 21, 1955. Its principal place of business is in Tucson, Arizona; and it is there engaged principally in the business of bottling and distributing beverages. This is the corporation with respect to which the transferee liability here involved was determined.

Crystal Coca-Cola Bottling Co. (dissolved)—hereinafter referred to as Crystal—was an Arizona corporation which was incorporated on or about January 1, 1951. Prior to November 1, 1955, it was engaged in the business of bottling and distributing beverages, at the address in Tucson which petitioner now uses. It filed its corporate income tax returns for all taxable periods here involved, with the collector or district director of internal revenue for the district of Arizona. This is the corporation with respect to which the tax deficiencies here involved were determined.

At all pertinent times prior to November 1, 1955, all issued and outstanding shares of the capital stock of Crystal, consisting of 500 shares of common stock, were owned by George Martin (hereinafter referred to as Martin); and the same were held either in his name or in the names of his nominees. Martin was the president of the corporation.

Under date of July 23, 1955, Martin and two other individuals named Samuel A. Gersten and Lawrence D. Mayer, executed a written agreement relative to the sale by Martin of all his said shares of stock of Crystal; and thereafter under date of October 26, 1955, Martin and these same two individuals executed a supplemental memorandum agreement, under which certain amendments were made to the original agreement. Said agreement, as amended, reflected the fact that Gersten and Mayer were in the process of organizing a new corporation to be known as Coca-Cola Bottling Company of Tucson, Inc. (the present petitioner); and that such new corporation would, after its incorporation, be "the Buyer" of all of Martin's said shares of stock of Crystal. It provided in part, as follows:

It is agreed that the intent of this agreement is that said new company [petitioner] is the Buyer of said stock of the old company [Crystal] * * * and that the said Gersten and Mayer are parties to this agreement only to the extent of their personal liability for the obligations herein undertaken by the said new company in excess of One Million Dollars ($1,000,000) and that the said Gersten and Mayer are responsible for, and covenant and agree to form, the new company which shall provide for authorized capital stock in the amount of $3,000,000, and in which said Gersten and Mayer shall be the holders (although in trust) of the issued and outstanding shares, and that said Gersten and Mayer are responsible for the closing details of this agreement as herein prescribed.

Said agreement, as amended, also provided in substance: That the closing date for the transaction therein mentioned, would be November 1, 1955; that Martin would at that time transfer to the new company

(petitioner) all the issued and outstanding shares of the capital stock of Crystal (being 500 shares), in consideration for the new company's installment promissory note for $1,450,000, which would be secured by deposit in escrow of all shares of stock of both the old and new companies; that thereupon, a new certificate for said shares of Crystal's stock would be issued to and in the name of the new company; and that the existing officers and directors of Crystal would then resign and be replaced by new officers and directors.

The agreement, as amended, further provided:

The purchaser [the present petitioner] shall have the right to liquidate and dissolve the corporate structure of the old company and to obtain a release of the collateral security pledge of the 500 shares of capital stock of the old company after November 1, 1955, *solely UPON CONDITION that all of the assets of the old company*, including all Bottler's franchises *are merged and transferred into the new company* with due diligence and in accordance with the statutes of the State of Arizona in such cases made and provided. [Emphasis supplied.]

And also included in the agreement, as amended, were the following provisions:

Seller [Martin] agrees to save, indemnify and hold harmless both the Buyer and the said old and new corporations against any and all claims for income taxes or any other kind of tax, interest and penalties claimed by or due to the United States or any state or municipality by the old corporation and, further, against any and all claims of any description or nature against the old corporation or against the real property and assets sold hereunder, arising from or by reason of any matters or thing occurring prior to the date of closing. *Any such claim or liability paid by Buyer may, at Buyer's option, be either collected from Seller or deducted from payments due hereunder*, PROVIDED, HOWEVER, Seller shall first have the right to contest, dispute and, if necessary, litigate any such claim, at Seller's sole expense, and in the name of the old company or the new company, so long as the operation of the business and the interests of Buyer are not prejudiced or jeopardized thereby.

Seller further guarantees payment of all outstanding accounts receivable as of date of settlement.
[Emphasis supplied.]

Crystal was not a party either to the above-mentioned agreement or to the above-mentioned memorandum agreement, both of which were executed only by Martin, Gersten, and Mayer.

On about October 21, 1955, petitioner was incorporated. Gersten and Mayer were the incorporators; and they, together with Boyd M. Morse, an attorney, were elected and qualified as the directors. Gersten was president; Mayer was vice president and treasurer; and Morse was secretary. The authorized capital stock of petitioner was $3 million divided into 3,000 common shares; but only 1,000 shares of the same were issued, being 500 shares to Gersten and 500 shares to Mayer, as the sole stockholders.

The directors of petitioner, at their first meeting on October 22, 1955, gave consideration to the above-mentioned agreement of July

23, 1955, between Martin, Gersten, and Mayer, in which petitioner was mentioned as the "Buyer"; and the directors then adopted the following resolution:

> RESOLVED, That this corporation [petitioner] adopt and ratify as its own contract the said agreement dated July 23, 1955, and that the officers of the corporation be authorized to carry out the terms of said agreement to the consummation thereof * * *

Also, at a special meeting of petitioner's board of directors held on October 31, 1955, said agreement, as amended and modified by the memorandum agreement of October 26, 1955, was again "ratified, approved and adopted as binding" upon petitioner; and the corporate officers were authorized and directed to proceed with the purchase of Crystal's stock, by executing and delivering to Martin the petitioner's promissory note for $1,450,000, and by providing the agreed security therefor. Petitioner's president then reported to the directors that all arrangements had been made for closing the purchase of said stock as of November 1, 1955; that petitioner was to take over the operation of Crystal's business after the close of business on October 31, 1955; and that, since it was contemplated that the liquidation of Crystal would be commenced immediately, petitioner would use Crystal's assets, equipment, and premises from that day on.

On the following day, November 1, 1955, petitioner's purchase of all the issued and outstanding shares of Crystal's capital stock was completed; the stock was transferred of record to petitioner; and a new certificate covering said shares was issued to and in the name of petitioner. Crystal thereupon became a wholly owned subsidiary of petitioner.

Immediately following the foregoing, petitioner's president advised petitioner's directors that, inasmuch as said stock had been acquired solely for the purpose of "acquiring all assets" of Crystal, he recommended that Crystal be "dissolved and liquidated as a subsidiary corporation." The directors thereupon adopted a resolution approving such plan; they authorized and directed petitioner's officers to vote for such liquidation and dissolution of Crystal, at a meeting of that corporation's stockholders to be called for such purpose; and they also authorized said officers to thereafter surrender all of petitioner's shares of Crystal for cancellation, upon transfer to petitioner of "all assets owned" by Crystal.

Said plan for liquidation and dissolution of Crystal was thereafter adopted and approved by Crystal's stockholders (all representing petitioner), at a stockholders meeting held on December 9, 1955; and immediately thereafter, the plan was given effect. At that time, all shares of Crystal's capital stock were surrendered by petitioner, and canceled; and all of Crystal's assets were transferred and delivered

to petitioner, effective as of November 1, 1955. The value of Crystal's assets which petitioner as a stockholder thus received in complete liquidation of Crystal, was in excess of $300,000. Petitioner delivered no consideration to Crystal for said assets.

Thereafter, the following occurred:

On December 29, 1955, a "final" corporate income tax return for Crystal, covering the period from July 1, 1955, through October 31, 1955, was filed with the district director of internal revenue for the district of Arizona. The balance sheet set forth in this return disclosed that the amount of Crystal's net assets as of the close of business on October 31, 1955, was $380,717.91.

On March 7, 1956, Boyd M. Morse, who was secretary of petitioner and who also had been secretary of Crystal at the time of its liquidation and dissolution, wrote a letter to the director of internal revenue at Phoenix, in which he enclosed Treasury Form 966 and other instruments relating to the dissolution of Crystal. In said letter, Morse advised the director that Crystal, at the time of its dissolution, was wholly owned by petitioner; that petitioner. was "transferee of all assets" of Crystal; and that such assets were duly transferred to and were still in the possession of petitioner.

On December 24, 1955, said Boyd M. Morse filed with the Arizona Corporation Commission, instruments relating to the dissolution of Crystal—apparently for the purpose of having the Commission terminate Crystal's charter. These instruments were, however, returned by the Commission to Morse, by reason of his failure to submit releases from the Arizona State Tax Commission of income and sales tax liabilities. Subsequently, under date of April 4, 1960, the Arizona Corporation Commission, by its own action, revoked and canceled Crystal's certificate of incorporation, by reason of no answer having been filed to a show-cause order which the Commission had issued, directing an answer as to why Crystal's charter should not be canceled because of its failure to pay State registration fees and to file corporation reports, for the years 1955 to 1959, inclusive.

On November 22, 1954, which was prior to the transfer of assets here involved, Crystal and respondent executed a consent (Form 872), under which the period for assessment of any income, excess profits or war profits taxes of Crystal for the year 1951, was extended to June 30, 1956. And, after the above-mentioned transfer of assets to petitioner and within the several applicable periods of limitation, petitioner as transferee of Crystal (dissolved) and the respondent executed additional consents under which the periods for assessment of petitioner's liability as a transferee of Crystal, for all taxable periods here involved, were extended to June 30, 1960.

The notice of transferee liability here involved, was issued to petitioner on October 15, 1959.

As of December 30, 1960, the principal balance still owing to Martin on petitioner's above-mentioned $1,450,000 promissory note, was $1,009,358.23. It has been stipulated that "throughout the period here involved," George Martin had a net worth in excess of $300,000.

<h3 style="text-align:center">ULTIMATE FINDINGS OF FACT.</h3>

All assets of Crystal were distributed and transferred by that corporation to petitioner as Crystal's sole stockholder, at the time Crystal was liquidated and dissolved pursuant to the resolution of its stockholders; and Crystal, at no time thereafter, had any asset or assets which the Commissioner or any creditor could obtain by distraint or execution.

Such transfer of assets to petitioner was without consideration.

The value of Crystal's assets which petitioner received in complete liquidation and dissolution of said corporation, was in excess of the aggregate amount of the deficiencies in Crystal's taxes which are here involved.

At the time respondent issued his notice of transferee liability to petitioner, none of the deficiencies in Crystal's taxes, which are here involved, had been paid or otherwise satisfied.

<h3 style="text-align:center">OPINION.</h3>

1. The Commissioner is here seeking to establish and enforce liability against petitioner as transferee of assets of the Crystal corporation (dissolved), for unpaid deficiencies in the income and excess profits taxes of Crystal for taxable periods ended prior to its liquidation and dissolution. The notice of transferee liability here involved, was issued to petitioner pursuant to section 311(a) of the 1939 Code and section 6901(a) of the 1954 Code. These sections provide summary procedures for establishing and enforcing the liability, at law or in equity, of a transferee of property of a taxpayer.

In the present proceeding, the burden of proof is on the Commissioner to show that petitioner is liable as a transferee of property, though not to show that the taxpayer (Crystal) was liable for the tax. (Sec. 1119(a) of 1939 Code; sec. 6902(a) of 1954 Code.) After having considered and weighed all of the evidence herein, we are satisfied that the burden resting upon the Commissioner has been sustained.

2. The petitioner argues, in substance: (1) That at the time the notice of transferee liability was issued on October 15, 1959, Crystal still owned and possessed an "asset" that was sufficient to satisfy all its tax liabilities—such asset being, as petitioner contends, a contractual right which Crystal acquired under the agreement of July 23, 1955, between Martin (its former stockholder) and Gersten

and Mayer, to have Martin indemnify against all claims for its unpaid Federal taxes; (2) that Crystal's ownership and possession of such "asset" prevents petitioner from being liable as a transferee, under the local law of Arizona which is controlling as to the existence of any such liability; and (3) that accordingly, the Commissioner is precluded from establishing transferee liability against petitioner, until he has first exhausted all attempts to seize such "asset" and recover the taxes from Martin.

Such contention is, in our opinion, entirely without merit. *First.* Crystal was not a party to said agreement of July 23, 1955; and none of the provisions thereof, as to which Crystal delivered no consideration, was intended by the parties to be for Crystal's benefit or protection. Rather, the intent and purpose of said agreement was to make arrangements for petitioner (which was then in the process of being incorporated, and which thereafter adopted and ratified the agreement as its own contract) to purchase all of Martin's shares of Crystal's stock; and also to protect Gersten, Mayer, and petitioner against the possibility that the value of the underlying assets of the stock they were purchasing for a fixed price, might be impaired by liens or claims for unpaid taxes. Provision was made in the agreement whereby the petitioner, after having acquired Crystal's stock, would immediately liquidate that corporation and take over "all the assets"—thereby rendering it impossible for Crystal to make any payment of taxes, for which it could seek indemnification from Martin. Also, the parties to said agreement, recognizing that any claim for taxes of Crystal would follow the transfer of that corporation's assets into the hands of petitioner, inserted a specific provision in the agreement, that petitioner could recover from Martin the amount of any such taxes which petitioner might be compelled to pay. This provision states:

Any such claim or liability [for taxes] paid by Buyer [petitioner] may, at Buyer's option, be either collected from Seller [Martin] or be deducted from payments [on the $1,450,000 promissory note of petitioner] due hereunder, * * *

*Second.* Even assuming that Crystal did, prior to its complete liquidation on November 1, 1955, have an "asset" consisting of a contractual right to be indemnified by Martin against Federal taxes, any such "asset" was transferred to petitioner on said date. We have hereinbefore found as a fact, that "all assets" of Crystal were transferred to petitioner, when Crystal was completely liquidated and dissolved on November 1, 1955. Petitioner's present contention to the contrary, is unsupported and in conflict with the evidence.

*Third.* The transfer to petitioner of all assets of Crystal, upon the latter corporation's complete liquidation and dissolution pursuant

to the resolution of its stockholders, caused petitioner to become liable as a transferee of property, for any unpaid taxes and interest thereon, debts and other liabilities of Crystal, to the extent of the value of the property so transferred without any consideration. Ariz. Rev. Stat. Ann. (Uniform Fraudulent Conveyance Act), secs. 44–1001 and 1002, 44–1004, and 44–1009. See also *Phillips* v. *Commissioner*, 283 U.S. 589, and authorities cited therein at footnotes 2 and 3. The fact that the amounts of the tax liabilities may not have been determined or assessed at the time of the transfer, is immaterial. *J. Warren Leach*, 21 T.C. 70, 75; *Scott* v. *Commissioner*, 117 F. 2d 36 (C.A. 8), and cases cited therein. Also, since Crystal's assets were exhausted in its liquidation, any attempt by the Commissioner to thereafter recover the taxes from Crystal would have been futile; and equity does not insist upon such an idle formality, as a prerequisite to proceeding directly against the transferee. *United States* v. *Fairall*, 16 F. 2d 328 (S.D.N.Y.); *United States* v. *Russell*, 241 F. 2d 879 (C.A. 1); *Coffee Pot Holding Corp.* v. *Commissioner*, 113 F. 2d 415 (C.A. 5), affirming a Memorandum Opinion of this Court.

3. We hold that petitioner is liable as a transferee of property of Crystal, for deficiencies in the latter's income and excess profits taxes for the taxable periods involved, together with interest thereon; and that its liability as such transferee may be enforced by the Commissioner in the present proceeding. Whatever the petitioner's contractual rights to indemnification from Martin may be, the Government is not required, in collecting its revenue, either to litigate such rights or to collect from such third person. See *Phillips* v. *Commissioner*, *supra* at 604. See also *John H. Humbert*, 24 B.T.A. 828, 829.

We decide the issue in favor of the respondent.

*Decision will be entered under Rule 50.*