**C. Russell DAVIS, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 92–10137–WJS.**

United States District Court,
D. Massachusetts.

Oct. 4, 1994.

---

50

Tamar E. Levy, Mary M. Collins, Fedele and Murray, Dedham, MA, for plaintiff C. Russell Davis, Jr. aka Charles Russell Davis, Jr.

George P. Eliopoulos, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant U.S.

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SKINNER, Senior District Judge.

This is an action for the refund of amounts paid in satisfaction of a transferee assessment made against the plaintiff pursuant to 26 U.S.C. § 6901. Plaintiff alleges that he is not liable as a transferee under § 6901 because the transfers were made without the intention to defraud, hinder or delay the collection of past taxes and fines due the government and because the transferor remained solvent after the transfers. Plaintiff also contends that defendant failed to exhaust all reasonable remedies against transferor prior to pursuing collection from transferee. Plaintiff moves for summary judgment.

### I. Summary judgment

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Gaskell v. Harvard Co-op Soc.,* 3 F.3d 495, 497 (1st Cir.1993). A genu-

ine issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1958). I "read the record and indulge all inferences in a light most favorable to the non-moving party." *Rivera–Ruiz v. Gonzalez–Rivera,* 983 F.2d 332, 334 (1st Cir.1993).

## II. Facts

The relevant facts, taken in the light most favorable to defendants, are as follows: In 1978, the Internal Revenue Service ("IRS") informed C. Russell Davis, Sr. ("Russell Sr.") that his 1976 federal income tax return was under examination. According to IRS information reports, Davis Sr. had failed to report substantial interest income received from various banks. As a result of this examination, a joint investigation by the investigation and the criminal investigation divisions of the IRS was commenced. The investigation continued through 1980 and eventually was expanded to cover the tax years 1974–77. In December of 1980, Davis Sr. was indicted by a federal grand jury for tax evasion. He pled guilty to evasion for the year 1974 and was placed on probation and fined. On August 16, 1983, the government made an assessment against Davis Sr. for unpaid taxes, penalties and interest for the years 1974–77 and demanded payment from Davis Sr.

While this investigation was ongoing, Davis Sr. transferred significant assets to his son and his business partner. In April of 1979, Davis Sr. quitclaimed his interest in his residence to his son, C. Russell Davis, Jr. ("Davis Jr.") for no consideration other than to honor the wishes of his wife who had died five years earlier. After the transfer, Davis Sr. continued to reside at the house and to pay all household expenses and taxes. The same day the house was transferred, Davis Sr. transferred his 50 percent ownership interest in American Glue & Resin, Inc. to his partner for no consideration. Davis Sr.'s status and employment with the company continued substantially unaltered after the transfer. Further, during March and April of 1979, Davis Sr. withdrew over $100,000 from his personal bank accounts and pur-

chased annuities in his name and in his son's name. Davis Jr. paid no consideration for these annuities. Davis Sr. did not inform his son of these annuities in his son's name, and the papers were kept locked in a safe, to which Davis Jr. had no access until Davis Sr.'s death. Davis Jr. Depo.Tr. at 28–33. At the time of Davis Sr.'s indictment, his assets were comprised of savings bonds and the annuities in his name.

Following the August 1983 assessment against Davis Sr., the government attempted to determine his assets for collection purposes. The IRS found no property in the name of Davis Sr. As part of this collection process, the IRS twice sought to interview Davis Sr. at his home regarding his financial condition, but on both occasions was told by Davis Jr. that his father was too sick to meet with the agents. The declaration of the IRS agent who attempted to visit Davis Sr. states that Davis Jr. was obstructive and uncooperative and that he "made it clear that he would not allow me to see his father irrespective of his father's health condidition." Payeur Decl.

Davis Sr. never contacted the IRS nor paid the assessment; thus, on November 9, 1987, the government made a transferee assessment under § 6901 against Davis Jr. for the value of Davis Sr.'s interest in the residence at the time he transferred it to his son. Davis Jr. paid the assessment, in full, on April 7, 1988. Davis Jr. filed a claim for refund with the IRS in November of 1989 which was disallowed. Upon disallowance of the claim, plaintiff commenced this action.

## III. Intent to Hinder, Delay, or Defraud

Internal Revenue Code (26 U.S.C.) § 6901(a) provides the procedure for the collection of an existing tax liability when a delinquent taxpayer transfers his assets. State law determines whether the transferee is liable under § 6901(a). *Commissioner v. Stern,* 357 U.S. 39, 42–45, 78 S.Ct. 1047, 1049–52, 2 L.Ed.2d 1126 (1958). Mass.Gen. L.Ann. ch. 109A § 7 states that "[e]very conveyance made ... with actual intent, as distinguished from intent presumed by law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both

present and future creditors." As the statute is in the disjunctive, intent to defraud is not necessary, but rather an intent to either hinder or delay is sufficient for a finding of liability. *See Joseph P. Manning Co. v. Shinopoulos,* 317 Mass. 97, 99, 56 N.E.2d 869, 870 (1944). Furthermore, unlike §§ 4 and 6 of ch. 109A, insolvency of the transferor at the time of the transfer need not be proved under § 7. *Sztramski v. Spinale,* 332 Mass. 500, 126 N.E.2d 118 (1955).

The question of fraud is one of fact. *Brown v. Little, Brown & Co., Inc.,* 269 Mass. 102, 117, 168 N.E. 521, 528 (1929). But because fraudulent intent is not likely to be admitted and is rarely subject to direct proof, it may be inferred from the facts and circumstances of a particular case. *Citizens Bank and Trust Co. v. Rockingham Trailer Sales, Inc.,* 351 Mass. 457, 221 N.E.2d 868 (1966). In the present case, the transfers occurred during the government's widening civil and criminal investigations when Davis Sr. knew that a substantial debt might be incurred; Davis Sr. transferred substantial assets to a family member without consideration, five years after the death of his wife whose last wishes he was purportedly carrying out; he retained full use and enjoyment of the property after the transfer to his son;[1] he transferred his interest in his business to his partner for no consideration while his own status in the company remained virtually unchanged;[2] and he withdrew well over

$100,000 from bank accounts which were the subject of the IRS investigation and purchased annuities with these funds. While this purchase of annuities may be a case of Davis Sr.'s "simply choos[ing] another vehicle for his investments" as plaintiff contends, a reasonable inference may be drawn that the transfer was an attempt to hinder the government's access to those funds.[3] Courts have viewed similar activities as indicators of fraud establishing the requisite actual intent to defraud. *See e.g., Boston Trading Group, Inc. v. Burnazos,* 835 F.2d 1504, 1508–11 (1st Cir.1987); *Carteret Sav. & Loan Ass'n v. Jackson,* 812 F.2d 36, 40 (1st Cir.1987); *Virta v. Mackey,* 343 Mass. 286, 178 N.E.2d 571 (1961); *In re Kaiser,* 722 F.2d 1574, 1582–83 (2d Cir.1983).

To avoid summary judgment, defendant must merely raise a genuine issue of material fact as to whether Davis Sr., in transferring his assets, did so with any intent either to defraud, delay, or to hinder the government in its efforts to collect taxes owed by him. While the above facts strongly suggest a genuine issue as to an actual intent to defraud, clearly, the record could support a reasonable conclusion that Davis Sr. acted with, at a minimum, an intent to hinder or delay the government. *See Klein v. Rossi,* 251 F.Supp. 1 (S.D.N.Y.1966) (transfers of selective property fraudulent when property retained, although sufficient to satisfy debts,

1. While a conveyance to a family member based on love and affection is not *per se* fraudulent as against creditors, *Kerrigan v. Fortunato,* 304 Mass. 617, 620, 24 N.E.2d 655, 656 (1939), such circumstances could lead a reasonable jury to find that the transfer was made with an intent to defraud, or at least an intent to hinder or delay, a creditor.

2. Even if Davis Sr. actually intended this transfer to be to his son, as plaintiff contends, this would not negate the possible inference that the transfer was an attempt to hinder a creditor by transferring assets out of a debtor's name.

3. Davis Sr. was aware that the bank accounts from which he withdrew the money were known to the IRS agents. The annuities he purchased accumulated interest which was not reportable to the IRS for several years. In addition to these annuities, the only other asset Davis Sr. owned after the transfer were U.S. Savings Bonds which no interest was to be paid on until they were cashed in; therefore, no yearly IRS Form 1099

would have been filed, unlike the interest income on Davis Sr.'s bank accounts, and nothing would necessarily have alerted the IRS that he owned any bonds.

While it is true that a form 1099 issued by Sentry Insurance regarding an annuity distribution and a statement of interest issued by the Bank of New England regarding interest earned on a U.S. Savings Bond were submitted to the IRS by these institutions, neither of these documents would have reached the IRS offices until 1985, potentially delaying the investigation of Davis Sr.'s assets which was well under way in 1983. Further, these statements do not necessarily negate Davis Sr.'s alleged intent to hinder the government, especially in light of the fact that the IRS's potential knowledge of these assets would have come from third parties. In fact, the record indicates that Davis Sr. denied the existence of the bonds when asked by an IRS special agent. Fitzsimmons Decl.

troublesome to creditors for purposes of satisfying debts.). The record indicates that Davis Sr. never satisfied his tax liabilities although he never disputed the liability and was sent a demand for payment from the IRS; he transferred money which he knew the IRS was aware of to instruments increasingly difficult for the IRS to discover; he told the investigating agent that he held no bonds when in fact he did; and he transferred substantial assets to his son and business partner without consideration.

## IV. Exhaustion of Remedies

 Plaintiff argues that the United States must exhaust its remedies against the transferor before pursuing collection against the transferee, citing *United States v. Russell,* 241 F.2d 879, 881 (1st Cir.1957). However, *Russell* was decided prior to *Commissioner v. Stern,* 357 U.S. at 42–45, 78 S.Ct. at 1049–52, which held that state law determines transferee liability under § 6901(a). I was not able to find, nor was counsel able to show, any Massachusetts case holding that a creditor must exhaust its remedies against the debtor before pursuing the transferee of an allegedly fraudulent conveyance. No such requirement is included in M.G.L.A. ch. 109A, and at least one Massachusetts court has suggested that although a debtor might be solvent and able to pay its indebtedness, under ch. 109A the creditor still had a remedy against the transferee, without exhausting all possible remedies against the debtor. *Sztramski v. Spinale,* 126 N.E.2d at 120–121.

But even if the government were required to exhaust all reasonable remedies[4] against Davis Sr. before proceeding against Davis Jr., the government has done so here. The record suggests that the IRS officer assigned to Davis Sr.'s case was unable to discover any assets on his own and attempted to contact Davis Sr. regarding his financial condition. According to his testimony, these efforts were thwarted by Davis Jr. Furthermore, defendant is not required to pursue and discover the very assets that Davis Sr. allegedly concealed.

4. A creditor need only pursue reasonable remedies and not those which would be fruitless and

## Conclusion

Plaintiff's request for summary judgment is **denied.**

The clerk shall reassign this case to another judge for trial.

in vain. *United States v. Russell,* 241 F.2d at 881.