R. E. WYCHE, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75071, 75072, 75073, 75074, 75075, 75083, 75102, 75156, 75807, 75808, 75809.

Promulgated August 4, 1937.

*S. P. Cousin, Esq.*, and *S. L. Herold, Esq.*, for the petitioners.

*Lloyd W. Creason, Esq.*, and *C. R. Marshall, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: J. Elmer Walker, W. M. Pollock, D. A. Pollock, George W. Wetherbee, C. W. Lane, W. E. Hall, J. T. Tanner, Fenet & Caldwell, S. J. Caldwell, Jr., and J. D. Fenet.

418

OPINION.

BLACK: There are two questions presented by the pleadings for decision.

(1) Are petitioners liable as transferees of the Sales-Walker Co.? The amount which each petitioner received of the January 20, 1930, dividend distribution is not in issue. Those amounts have been stipulated. Each petitioner does however dispute that he is liable as transferee for any amount.

(2) If petitioners are liable as transferees, are they entitled to have the transferors' tax liability for the year 1930 reduced by the allowance of 27½ per centum depletion of the $100,000 cash payment received from Phillips Petroleum Co. as part payment for the assignment of the oil leases in question?

It will be unnecessary to discuss issue No. 2 until we have decided issue No. 1, for if we decide issue No. 1 in petitioners' favor then it will be unnecessary for us to decide issue 2, not having the transferor corporation before us.

The burden of proof to establish transferee liability is of course upon respondent. As we have already stated, petitioners each admit that they received certain cash dividend distributions from the Sales-Walker Co. in January 1930, but the mere fact of a transfer of part of its assets by a corporation to its stockholders does not establish transferee liability. A necessary item of proof in any transferee proceeding is that the taxpayer transferor was insolvent at the time of the transfer or that the transfer itself made the transferor insolvent, or that the transfer was one of a series of distributions in pursuance of complete liquidation, which left the corporation insolvent.[1] Stockholders receiving dividends from a solvent corporation not in liquidation can not be held as transferees.[2]

Respondent does not dispute the correctness of the foregoing propositions, but he does contend that when the Sales-Walker Co. distributed in January 1930 the cash dividend of $89,505 to its stockholders, it thereby distributed the most of its assets which had value and that the remaining assets left in the hands of the corporation

---

[1] American Feature Film Co., 24 B. T. A. 18; R. E. Burdick, 24 B. T. A. 1297; Isaac Michael Green, 26 B. T. A. 719; Kinnett-Odom Co., 19 B. T. A. 1124; Samuel Keller, 21 B. T. A. 84; affd., 59 Fed. (2d) 499; Eliza J. Wray, 24 B. T. A. 94; Helen Dean Wright, 28 B. T. A. 543; and Benjamin E. May, 35 B. T. A. 84.

[2] M. H. Graham, 26 B. T. A. 301; appeal dismissed, 63 Fed. (2d) 997; Mrs. J. F. Alexander, Executrix, 27 B. T. A. 1210; and United States v. Armstrong, 26 Fed. (2d) 227.

were of insufficient value to discharge its liabilities, including the tax liability here involved.

Petitioners contend that no tax liability against the corporation had yet accrued for the year 1930, when the dividend distribution was made in January 1930, and therefore the $9,556.28 tax liability here in question should not be considered in determining the corporation's solvency after the dividend distribution was made. We cannot agree with this contention.

It seems to be well settled that transferee liability extends to after-accruing taxes in the sense of retroactive liability for taxes in the year of transfer or prior years. In other words, the liability need not have been known when the transfer was made.[3] So, after all, the decision as to whether petitioners are liable as transferees in the instant case turns upon a question of fact rather than one of law. That question of fact is whether the contingent payments of $150,000 which Phillips Petroleum Co. had contracted to pay the Sales-Walker Co. out of oil, if and when produced, had a fair market value of $75,000 at the time contract was received and at the time the cash dividend distribution of January 20, 1930, was made.

The parties all seem to be agreed that the principal asset which the Sales-Walker Co. had left on hand after the payment of the dividend in question was the $150,000 Phillips Petroleum Co. contract for the contingent oil payment. There was, to be sure, several thousand dollars cash left on hand and some other property against which there were only small liabilities exclusive of the tax here involved. The exact amount of these assets and liabilities, exclusive of the oil payment, we have been unable to determine from the evidence. If, however, as respondent contends, this contingent oil contract in question had no fair market value at the time of the dividend payment in question and was not salable at any price, then it seems clear that the Sales-Walker Co. was made insolvent by the dividend distribution and continued so until the present time and there was never any time after the dividend was paid that the corporation could have sold its assets for enough to pay all its liabilities, including the tax liability here in question. On the other hand, if petitioners' contention that the transferor corporation's contract for these contingent oil payments of $150,000 had a fair market value of $75,000 at the time the dividend distribution was made is true, then it is clear that the corporation was not made insolvent by the dividend distribution, but its insolvency resulted from subsequent events which had nothing to do with the dividend distribution.

---

[3] See in general upon this subject: *Updike* v. *United States,* 8 Fed. (2d) 913; *United States* v. *Armstrong and Keaton* v. *United States,* 26 Fed. (2d) 227; *Bass & Peake Automobile Co.* v. *United States,* 285 Fed. 410; affd., 290 Fed. 167; *United States* v. *McHatton,* 266 Fed. 602.

The petitioners produced three witnesses: George W. Wetherbee, R. G. Smitherman, Jr., and W. E. Hall, who testified that the contract for $150,000 contingent oil payments from the Phillips Petroleum Co. could have been sold for at least 50 cents on the dollar, or $75,000 in all.

Wetherbee and Hall are petitioners in these proceedings and their testimony is of course subject to being weighed from the standpoint of self-interest, but the other witness, R. G. Smitherman, Jr., so far as the record shows, has no interest in these proceedings and his testimony must therefore be viewed as a witness who has no self-interest. On this evidence we have found that the corporation's contract with the Phillips Petroleum Co. for contingent oil payments had a fair market value of $75,000 at the time of the dividend distribution. This holding makes it necessary for us to hold that the transferor corporation was not rendered insolvent by the dividend distribution to stockholders in question, but that its insolvency resulted from later events which occurred in 1930.

Counsel for the Commissioner, in contending that the contract of the Sales-Walker Co. with the Phillips Petroleum Co. for contingent oil payments of $150,000, if and when produced, had no fair market value and should be considered valueless in determining whether the dividend distribution of $89,505 rendered Sales-Walker Co. insolvent, cites such cases as *Burnet* v. *Logan*, 283 U. S. 404, and *E. F. Simms*, 28 B. T. A. 988. From these cases respondent seems to deduce that as a matter of law such contracts have no salable value and therefore should not be considered in determining the solvency or insolvency of a particular taxpayer at the time of a dividend distribution to its stockholders.

We do not think *Burnet* v. *Logan*, *supra*, and Board and court cases which have followed it go so far. These cases simply hold that where the future payments are highly contingent in character, a taxpayer on the accrual basis should not be compelled to accrue them as income even though they do have some value, or where the taxpayer is on the cash basis he should not be compelled to treat them as property, the equivalent of cash, received in exchange for other property. For example, in the recent case of *Edwards Drilling Co.*, 35 B. T. A. 341, we held that the rights acquired by the taxpayer to certain contingent oil payments similar to those in question in the instant case were contingent in character and that, although the evidence showed they had a fair market value and could have been sold at a substantial discount, the fair market value of such contracts was not accruable as taxable income. In that case we said:

The fact that the rights had a fair market value does not of itself require that the amount thereof be accrued as taxable income. *Bedell* v. *Commissioner*, 30 Fed. (2d) 622; *Commissioner* v. *Darnell, Inc.*, 60 Fed. (2d) 82; *Teck Hobbs*, 26 B. T. A. 241: * * *

While it is undoubtedly true, as above stated, that the fact that these contracts are property of a sort and have a fair market value does not of itself require that the amount thereof be accrued as taxable income, it is also true, we think, that the value of such contracts, where the evidence shows they have value, would have to be considered in determining whether the corporation owning them was solvent or insolvent.

In the *Burnet* v. *Logan* case, *supra*, although the Supreme Court held that the taxpayers were entitled to a return of capital investment before paying income tax based on conjectural market value of annual payments, the Commissioner had valued and taxed the right to receive such contingent payments as a part of Mrs. Logan's mother's estate. As to that phase of the matter, the Supreme Court said:

* * * From her mother's estate Mrs. Logan obtained the right to share in possible proceeds of a contract thereafter to pay indefinite sums. The value of this was assumed to be $277,164.50 and its transfer was so taxed. Some valuation, speculative or otherwise, was necessary in order to close the estate.

Thus, while the value of such a right to receive contingent payments will not be counted as accrued income for one on the accrual basis, or as the receipt of property equivalent to cash for one on the cash basis, nevertheless the value of such a right will be counted as a part of the estate, for estate tax purposes. Suppose, for example, that in the case of Mrs. Logan's mother the contract to receive contingent payments, valued at $277,164.50 by the Commissioner for estate tax purposes, had been the only property of the estate and there had been claims against the estate of $25,000. Would it have been held that the estate was insolvent and unable to pay its debts? We think not.

Just so in the instant case we do not think we can hold that the Sales-Walker Oil Co. was left insolvent when it distributed to its stockholders a dividend of $89,505 and had left on hand a few thousand dollars cash, some tangible property of comparatively small value, and this contingent right to receive $150,000 in oil payments, which witnesses have testified could have been sold for $75,000.

The facts show that the transferor company continued in business a good long while after the dividend distribution in question. As a matter of fact the evidence shows that it has never been dissolved, but still owns a small oil royalty interest from which it occasionally derives an income of an inconsequential amount. There is no doubt but that the transferor corporation is at present insolvent and can not pay the tax liability here in question, but, as we have already endeavored to point out, we do not think that respondent has met the burden of proof of showing that this insolvency was brought about by the January 20, 1930, dividend dis-

tribution to stockholders. On the contrary, the facts show that several months after the dividend distribution in question, to wit, in July 1930, the transferor corporation, Sales-Walker Co., reacquired the leases from the Phillips Petroleum Co. for $1,600 cash and the cancellation of the contingent oil payments of $150,000. This was after the Phillips Petroleum Co. had drilled three dry holes on the leases and had evidently concluded that the land was unproductive of oil in paying quantities. The transferor corporation was however more optimistic and spent approximately $7,000 more in trying to develop the property as oil producing property and finally abandoned the effort in 1931 after practically all of its funds had been exhausted.

It seems to us that it was these subsequent events, including the collapse of Phillips Petroleum Co. obligation to pay $150,000 out of oil if and when produced, which brought about the insolvency of the transferor corporation.

We think this case is distinguishable from *Benjamin E. May*, 35 B. T. A. 84. In that case a corporation exchanged most of its assets for cash and stock of another corporation and pursuant to a plan of complete liquidation, distributed assets to its stockholders in liquidation of its capital stock. A fund left for the payment of creditors was dissipated so that the Federal income tax liability was never paid. On these facts we held that all stockholders receiving distributions in complete liquidation of their stock are liable as transferees of the corporation, since a stockholder is not entitled to receive in such complete liquidation any assets of a corporation until all of its obligations to creditors are discharged.

In the instant case there is no evidence to show that the $89,505 dividend declared and paid January 20, 1930, was in pursuance of a plan for the complete liquidation of Sales-Walker Co. On the contrary, as we have already pointed out, the corporation continued in business and later on in the year bought back the leases which it had sold to the Phillips Petroleum Co. and endeavored to develop them. This effort proved a commercial failure and in 1931 the corporation found itself wholly insolvent, with all its money spent and nothing with which to pay the tax liability here involved.

We therefore hold on these facts that petitioners are not liable as transferees of the Sales-Walker Oil & Gas Co. This holding makes it unnecessary that we pass upon issue No. 2, relating to the question of percentage depletion on the alleged bonus payment of $100,000.

Reviewed by the Board.

*Decision will be entered as to each petitioner that there is no liability as transferee of the Sales-Walker Oil & Gas Co.*