**Robert GINSBERG, Petitioner-Appellant,**
v.
**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 307, Docket 27242.**

United States Court of Appeals
Second Circuit.

Argued April 27, 1962.

Decided July 11, 1962.

Frederick Siegmund, Brooklyn, N. Y. (Daniel Eisenberg, Brooklyn, N. Y., on the brief), for petitioner-appellant.

Edward L. Rogers, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Dept. of Justice, Washington, D. C., on the brief), for respondent-appellee.

Before WATERMAN, SMITH and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Petitioner Robert Ginsberg and his brother Donald are the sons of Allen and Bess Ginsberg and residents of the Borough of Brooklyn, New York City. Income tax liabilities for the years 1943–45 were incurred by the parents, the assessment being made on June 2, 1955. Such liabilities, together with interest, remain due and unpaid.

As of December 21, 1953, Allen Ginsberg owned 50 shares of stock of the Allen Nevins Packing Corporation, hereinafter called the corporation, which represented all of the outstanding and issued shares. This corporation was organized under the laws of the State of New York.

Allen Ginsberg caused stock certificates of the corporation to be made out in the names of his sons as follows: on December 22, 1953, certificate #4, representing 7½ shares of stock was made to Robert Ginsberg and certificate #5, representing 7½ shares of stock was made to Donald Ginsberg; on December 10, 1954, certificate #7, representing 6

shares of stock was made out to Robert Ginsberg and certificate #8, representing 6 shares of stock was made out to Donald Ginsberg; and on January 20, 1955, certificate #10, representing 5 shares of stock was made out to Robert Ginsberg and certificate #11, representing 5 shares of stock was made out to Donald Ginsberg. Each certificate bore Federal transfer stamps. During 1953, 1954, and 1955, Robert Ginsberg was secretary of the corporation and the certificates bore his signature as secretary, as well as the signature of Allen Ginsberg as president. On each of the above dates a new stock certificate was issued to Allen Ginsberg representing the remaining balance of the outstanding stock.

Upon each of the above dates, Robert Ginsberg, at the direction of his father, went to the law offices of Hoffman and Rubin and signed the certificates. Irvin Hoffman, the attorney who had organized the corporation, kept in his possession the minute book of the corporation and the stock certificate book, together with the above certificates issued in the names of the brothers, until February 1958, at which time he surrendered them to Allen Ginsberg. Hoffman also kept in his possession over that period the certificates which had been issued in the name of the father, Allen Ginsberg. Upon receipt of these stock certificates in February 1958, Allen Ginsberg delivered possession thereof to his attorney, Daniel Eisenberg, in behalf of Allen Ginsberg, in whose possession they have remained ever since.

No consideration was involved in the transactions whereby the shares of stock were made out in the names of the brothers. At the time the certificates were made out, Allen Ginsberg and Bess Ginsberg intended to make true and valid gifts.

The shares of stock of the corporation had the following value at the times indicated:

| | |
|---|---|
| December 1953 | $378.63 per share |
| December 1954 | 386.88 per share |
| January 1955 | 396.85 per share |

On December 22, 1953, December 10, 1954, and January 20, 1955, the liabilities of Allen and Bess Ginsberg exceeded the amount of their assets.

On June 21, 1957, the respondent mailed a letter notifying each brother that it was proposed to assess against each the amount of $7,400, plus interest, constituting his liability as transferee of assets of Allen and Bess Ginsberg, for income taxes due from the latter. This was the usual "30-day letter" in which it was stated that the recipient might file a protest and have a conference within a 30-day period. Therein it was specifically stated that the letter did not constitute a statutory notice of transferee liability, but that if, upon the expiration of the 30-day period, the recipient did not agree to the proposed determination or file a written protest, a statutory notice would be sent as provided by law.

On November 15, 1957, the petitioner Robert Ginsberg executed and delivered to Allen Ginsberg a document providing as follows:

"Know all men by these presents that the undersigned, * * * does hereby assign, transfer and set over unto Allen Ginsberg, eighteen and one-half (18½) shares of the capital stock of Allen Nevins Packing Corp., as contained in the following certificates:

Certificate #4 for 7½ shares
Certificate #7 for 6 shares
Certificate #10 for 5 shares

And I do hereby irrevocably constitute and appoint Allen Ginsberg to transfer the said stock on the books of the said Allen Nevins Packing Corp., with full power of substitution in the premises."

On the same date Donald Ginsberg executed and delivered to Allen Ginsberg a similar document relating to the certificates in his name. The petitioner did not endorse the stock certificates and the stock in question was not transferred to Allen Ginsberg on the corporate records.

By letter dated January 9, 1958, the Commissioner notified the petitioner and Donald Ginsberg of his determination that each was liable, to the extent of $7,400, plus interest, as transferee of assets of Allen and Bess Ginsberg, for the unpaid deficiencies in tax and additions to tax of Allen and Bess Ginsberg. In each instance he stated:

"Inasmuch as the value of assets received by you during the years 1953, 1954 and 1955 consisting of shares in the Allen Nevins Packing Corp., amounted to $7,400.00 your liability as Transferee is limited to that amount."

The Tax Court held that, under the law of New York, petitioner was liable as a gratuitous transferee of property from his insolvent father and that he was not relieved of liability by the reconveyance since it was not fully consummated until after he received notice of his transferee liability. The petitioner thereupon filed this petition for review.

Donald Ginsberg, on the other hand, was held not liable as a transferee because, unlike petitioner, he had had no knowledge of the gift prior to notice from the Commissioner, and he thereafter repudiated it within a reasonable time.

Section 311 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 311 is the governing statutory provision. It provides in part:

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter."

This provision neither creates nor defines a substantive liability but merely provides a procedure by which taxes owed by a transferor may be collected from a transferee. For the substantive elements of the transferee's liability we must look to state law. E. g., Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958).

If there was a valid transfer of the stock from Allen Ginsberg to petitioner, there is no question but that it constituted a fraudulent conveyance under applicable New York law. Allen Ginsberg was insolvent when the alleged transfers took place, and he told petitioner the purpose was to protect himself in a tax matter. Petitioner acquiesced in this purpose, and no consideration passed from him to his father. Under New York law, assuming title to the stock passed, this was clearly a fraudulent conveyance. 12 McKinney's Consolidated Laws of New York, c. 12, Debtor and Creditor Law, § 270 et seq.

Petitioner contends, however, that no transfer occurred because there was no delivery of the stock, a prerequisite to a valid conveyance under New York law. Alternatively, he argues that even if the attempted transfer was valid, a reconveyance was effectuated before institution of proceedings by the Commissioner and he is thereby relieved of whatever liability he might otherwise have incurred. Petitioner also contends the Commissioner did not exhaust his remedies against Allen Ginsberg, the one primarily liable, as he was required to do. Finally, the argument is raised that no remedy is available under New York law when the transferee no longer has the specific property transferred. We find no merit in any of these contentions and affirm.

■ 40 McKinney's Consolidated Laws of New York, c. 41, Personal Property Law, § 162 provides:

"§ 162. How title to certificates and shares may be transferred

"Title to a certificate and to the shares represented thereby can be transferred only,

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

"(c) By delivery of a separate instrument containing a written assignment of the certificate, or an interest therein, executed by the officer who levies an execution against property upon such certificate, or such interest therein, and sells the same, to the purchaser on the execution sale, and such assignment shall, together with delivery of the certificate, effect a transfer of the title to the certificate, or the interest therein levied upon and sold as specified in such assignment, and the shares represented by such certificate, or such interest therein, to the purchaser at the execution sale."

Petitioner relies on several New York decisions holding that a valid transfer requires both delivery and acceptance. E. g., Vincent v. Rix, 248 N.Y. 76, 161 N.E. 425 (1928). Petitioner further contends the intent of the donor and the transfer of title on the corporate records are insufficient to show a transfer under New York law. We need not decide the sufficiency of these factors, however, for we believe the record supports the Tax Court's finding there was delivery and acceptance in this case. Allen Ginsberg concededly intended to make a gift of the disputed shares, and we find it difficult to accept petitioner's assertion that he was ignorant of this intent. He knew the purpose of the transaction was to protect his father from the Internal Revenue Service, but that could be accomplished only by transferring title to the stock. Furthermore, petitioner acquiesced fully in the formalities of transfer and participated affirmatively by signing the new certificates, an act completely at variance with petitioner's self-serving assertion that he did not intend to assume title and never had possession of the stock. The fact he left them with Hoffman is of little aid to petitioner's defense of non-delivery since he was free, having accepted ownership, to constitute the attorney as his agent for the purpose of holding the certificates. The Tax Court found he did so, and we believe petitioner's behavior supports this finding.

■ As for the attempted retransfer, we must decide when, not whether, it was made. A transferee may relieve himself of liability by a reconveyance to the transferor before institution of an attack by creditors. Glenn, Fraudulent Conveyances and Preferences, rev. ed. § 57. The Tax Court has held that a reconveyance after issuance of the statutory notice of transferee liability is insufficient to relieve the transferee of liability. Louise Noell, 24 T.C. 329, *appeal dismissed pursuant to stipulation*, 234 F.2d 665 (8 Cir. 1956). The theory underlying this rule is that once proceedings have been instituted by creditors, the transferee is under notice that he is being held liable and that a further transfer is at his peril. We believe that decision is correct and follow it. If a creditor goes to the trouble of instituting proceedings, he should not be compelled to dismiss them and begin anew against the one primarily liable, particularly since a transferee normally has, as the petitioner here did, ample opportunity to

extricate himself before institution of proceedings. We believe, moreover, the statutory notice and determination of liability constitutes the initiation of proceedings under Section 311, since petitioner was thereby compelled either to acquiesce in the Commissioner's finding or to file a petition for redetermination in the Tax Court. 26 U.S.C.A. §§ 6212, 6213, 7421.

■ In this case, the Tax Court held the reconveyance did not occur until February, 1958, the notice of transferee liability having been issued in January.[1] We agree. Although petitioner executed an assignment in November, 1957, the certificates were not endorsed and the alleged change in ownership was not recorded on the corporate books. Nor did petitioner take any action whatsoever to deliver the stock to Allen Ginsberg until February, 1958, even though that is required under New York law. 40 McKinney's Consolidated Laws of New York, Personal Property Law, § 162. A mere assignment of stock without endorsement, delivery or transfer on the corporate books is insufficient to convey title in New York. Ibid. See Vincent v. Rix, 248 N.Y. 76, 161 N.E. 425 (1928). Moreover, petitioner never notified the Commissioner he had reconveyed the stock even though he had received the so-called 30-day letter which stated that he might protest and have a conference if he desired to avoid the statutory notice of transferee liability. This conduct would justify an inference that petitioner in fact lacked a donative intent and desired merely to create a situation in which both he and his father could deny ownership depending upon which one the Commissioner proceeded against. We

find it hard to believe that petitioner, having once gone through the formalities of a transfer, was not aware of the painfully obvious defects in the attempted reconveyance. It was always within his power to make a clear repudiation of the initial transfer [2] and to extricate himself from the situation in which he now finds himself. Having chosen not to do so, however, he proceeded at his peril.

■ Petitioner contends that the Commissioner failed to exhaust his remedies against Allen Ginsberg. He concedes, however, that exhaustion is unnecessary if it would be futile. Coffee Pot Holding Corp. v. Commissioner, 113 F.2d 415 (5 Cir. 1940). Since the whole purpose and effect of the initial transfer was to make exhaustion against the father futile, we fail to see what meaningful remedies were left to the Commissioner other than proceedings against petitioner.

■ Finally, petitioner contends that under Section 278 of the New York Debtor and Creditor Law, 12 McKinney's Consolidated Laws of New York, § 278, the only remedy available is to have the conveyance set aside or to attack the property transferred directly. Since petitioner no longer has the property, the argument goes, there is no remedy available which may be used against him. But we need not determine whether New York law is so limited, for we believe the remedy or procedure to be employed is governed, not by New York law, but by Section 311 of the Internal Revenue Code. While state law determines the elements of liability, the means of enforcement are governed by Section 311, Commissioner of Internal Revenue v.

1. This holding obviated the necessity of deciding whether the "30-day letter" might also constitute an institution of proceedings. Since we affirm on the grounds relied on by the Tax Court, we also do not decide that issue.

2. We find no merit in the repeated assertion that petitioner did all he could to rid himself of the stock. He certainly could have repudiated the initial transfer instead of participating in the formalities.

Even after that he could have attempted to get the stock from Hoffman and to deliver it to his father. If his father claimed ownership, there would be no problem since the necessary formalities could be quickly accomplished. If his father denied ownership and refused to accept redelivery, petitioner could have simply admitted ownership and acquiesced in the Commissioner's determination of transferee liability.

Stern, supra, and we find no barrier in that statute to a personal judgment against a transferee who effectuates a retransfer after the Commissioner has instituted proceedings against him. Petitioner also contends that a personal judgment against him should not be rendered since he was an "innocent" transferee and a "passive recipient." Even assuming Section 311 is so limited, a doubtful proposition in itself, we think petitioner's conceded knowledge of the purpose of the initial transaction and his participation in the formalities of transfer are more than sufficient to refute a claim of innocence.

Affirmed.