**UNITED  STATES  of  America,  Plaintiff,**

v.

**Steven  M.  BRAND  and  Susan  Brand,  Defendants.**

**No.  C71–85.**

United  States  District  Court,
N.  D.  Ohio,  E.  D.
May  30,  1972.

---

Robert Bauer, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

Harlan Pomeroy, Cleveland, Ohio, for defendants.

## MEMORANDUM

BEN C. GREEN, District Judge:

This action was brought on October 9, 1970:

> . . . to obtain a judgment against defendants for certain unpaid federal tax liabilities of Milton Brand, a resident of Miami Beach, Florida. Such unpaid federal tax liabilities are collectible from the defendants by virtue of a fraudulent conveyance of certain real property hereinafter described.

The defendants, Steven M. and Susan Brand, are the son and daughter-in-law of Milton Brand. The alleged fraudulent conveyance was the transfer of a residence located at 18040 N.E. Ninth Place, North Miami Beach, Florida, on or about March 22, 1966, from the taxpayer to the defendants.

This matter is now before the Court on a motion by defendants for summary judgment and a motion by plaintiff to take additional depositions. There is a direct correlation between the said motions, it being plaintiff's position that there exists a genuine issue of material fact relative to the question of law raised by defendants' motion and that further discovery is essential to resolve such factual issue.

The factual predicate of defendants' motion is contained in the following excerpts from defendants' affidavit:

> . . . In May of 1967 Milton [Brand] telephoned the defendants from Florida and told them that he would have to sell the house because he needed money. Milton arranged for the sale and defendants took no part in it, except to sign and return papers as instructed by Milton's attorney in Florida. The necessary papers were prepared by Milton Brand's attorney in Florida, forwarded to the defendants by mail, executed by them and returned by mail to Florida. . .

When the defendants received the check (for $5,531.48) from the sale of the house from the escrow agent, they kept the $500 which Milton then owed them and on May 27, 1967 returned the remainder ($5,031.48) to Milton as he had directed. The balance of the proceeds, held by Milton's attorney in Florida, was paid directly by him to Milton Brand. After they forwarded to Milton Brand the balance of the money from the sale of the house, the defendants had nothing whatsoever to do with the house. They were never informed, nor did they inquire, as to the reasons for the sale of the house or for Milton's need for funds.

Appended to the affidavit are documents, including the check referred to above, supporting the representations made by defendants.

Plaintiff in response to an interrogatory, has admitted that it "is not aware of any official notification to the defendants of either the existence of the unpaid tax liabilities or the amounts thereof" owed by Milton Brand. Plaintiff also admits that "[t]he United States made no attempt, other than the present action, to collect from the defendants".

Based on the sale of the property and transmittal of the proceeds thereof (less the $500 loan repayment) to Milton Brand prior to any notice of the tax liability of Mr. Brand, or an attempt to effect collection thereof, defendants maintain that transferee liability may not be imposed upon them.

Plaintiff resists the motion for summary judgment based on the contention that defendants may be held liable for transferee liability, notwithstanding the sale of the property and the payment of the proceeds thereof to Milton Brand, if they had knowledge of Milton Brand's tax problems prior to the sale. Plaintiff contends that there is already a fact question on the record regarding such knowledge. Additionally, plaintiff wishes to continue discovery by deposing the defendants, Milton Brand and George Talianoff, contending that such discovery is essential to resolution of the fact question regarding the defendants' alleged knowledge of Mr. Brand's difficulties.

There is an aspect of this request for continuing discovery which is both somewhat puzzling and also somewhat disturbing to the Court. It appears from the record that the government has been aware of the pertinent facts regarding the transfer of the property to the defendants, and its subsequent sale, since shortly after the sale took place in 1967. The Court finds it puzzling that since that time the government has not, through its investigation, developed what it believes are the true state of facts. The Court is also somewhat surprised that the plaintiff did not make the taking of the depositions of the taxpayer and the defendants the first order of deposition discovery, rather than the last. The disturbing aspect of this request is that plaintiff has already taken two rounds of depositions in Miami, Florida in March and May, 1971, one of which was devoted to taking the testimony of government employees. George Talianoff and Milton Brand are both located in the Miami area. It seems to the Court to be imposing an inordinate burden upon defendants to have their counsel attend, or secure representation at, a third round of depositions in Florida. This is particularly true in light of the fact that the total recovery sought herein is $10,000, based on a limited period of record ownership of the realty in question by the defendants which resulted in no benefits (economic or otherwise) to them.

The additional discovery which plaintiff seeks to undertake is stated to be for the purpose of proving that the defendants, prior to the sale of the property, knew of the tax problems of Milton Brand. From the record to date, it appears to the Court that plaintiff is seeking to pursue a rather forlorn hope in that regard.

By way of affidavit the defendants completely disclaim any knowledge of Milton Brand's financial affairs, and it is doubtful that they would change that position. While the circumstances of the transfer and later sale of the property might cause a reasonable person to wonder about Mr. Brand's general solvency, it would not charge one with knowledge of existing tax claims.

Originally, in answers to interrogatories, the government maintained that the defendants were charged with knowledge in that Steven Brand lived with his father in 1965, and "it is reasonable to assume that the defendants, being close relatives of the taxpayer" knew of his tax problems. However, by way of affidavit, defendants established

that they were married and living in their own residence in Washington, D. C. in 1965, from which location they moved to Iowa. It is also established that their contacts with Milton Brand were, at the very best, minimal.

Faced with that sworn testimony, the government has shifted its position and now maintains that knowledge on the part of the defendants is established by reason of a letter from George Talianoff, an attorney located in Miami Beach, Florida, to an agent of the Internal Revenue. The I.R.S. had levied upon the rents of the property in question, after the transfer of title to the defendants, based upon an assessment against Milton Brand. Mr. Talianoff wrote requesting removal of the notice of levy, enclosing a copy of a lease executed between the tenants and Steven M. Brand, stating that:

Mr. Wolfstein advised our clients, Mr. and Mrs. Steven M. Brand, that by virtue of the Notice of Levy, they will not pay the rent due January 1, 1967 to Mr. and Mrs. Brand.

However, the government's own discovery to date rebuts the statement of the letter that Mr. and Mrs. Brand had dealings with the tenants.

When title to the realty was transferred to the defendants they executed a power of attorney to Mr. William Brand, a brother of Milton Brand, granting him general authority to handle the property. On his deposition, taken by the plaintiff, William Brand testified that he collected all rents and took care of all expenses on the property, and had been doing so for Milton Brand. He testified that he remitted no money to Steven M. Brand at any time, and that he had virtually no contact with him either before or after receiving the power of attorney. There is nothing in his deposition to indicate that he informed the defendant of the government's notice of levy. The general import of William Brand's testimony is that whatever dealings he had with the property were at the direction of Milton Brand.

Of a more compelling nature is the deposition testimony of the tenants, as secured by the plaintiff. They testified that the property was originally leased from Milton Brand, and up to the time in early 1967 when they were evicted, they believed he was still the owner. They had paid no attention to the name of the lessor which appeared on their lease renewal. All rent checks had been made payable by the Wolfsteins to Milton Brand and had been collected by William Brand.

Mrs. Wolfstein testified that subsequent to the notice of levy she was warned that unless the payment of rent was continued to Milton Brand they would be evicted. Not until they saw Steven Brand's name as the party plaintiff in the eviction proceedings were the Wolfsteins aware of his existence. They specifically disclaimed any communication with Steven Brand.

The government also deposed the revenue agent who handled the notice of levy. He testified as follows:

Q. Did you have any contact with any other persons concerning that particular levy on the Wolfsteins' attorneys?

A. Yes, I spoke to Mr. Talianoff, I believe, who was the attorney for Mr. Brand.

Q. Which Mr. Brand are you speaking about?

A. *Milton Brand.* And I spoke to an attorney, Douglas, I believe it was, from Hollywood.

Q. From where?

A. Hollywood. Who was Mrs. Wolfstein's attorney. (emphasis added)

In the face of that evidence, developed by the plaintiff, the Court does not believe that the representation of Mr. Talianoff that the Wolfsteins communicated with the defendants can be supported. What obviously transpired is that after the transfer to the defendants all matters relating to the property were left with William Brand, as they had been

previously. William Brand was operating under the direction of Milton Brand. When the notice of levy was served, Milton Brand's attorney stepped in to handle the matter and in referring to the Wolfsteins' refusal to pay further rent under the circumstances he named the legal owners as the parties to whom such rent was due.

In the Court's opinion, it is not necessary that plaintifff undertake the additional discovery in order to resolve the issue of the defendants' liability herein. Assuming for the sake of argument the unlikely possibility that the plaintiff could secure evidence from which the Court might infer that the defendants had general knowledge that Milton Brand was having financial difficulties which included tax problems, that would not provide a basis for recovery on the plaintiff's complaint.

The transferee liability which is asserted against the defendants is based upon procedural, rather than substantive, provisions of the internal revenue laws: The principle of law applicable thereto is well stated in Commissioner of Internal Revenue v. Southern Bell Tel. & Tel. Co., 102 F.2d 397, 401 (C.A.6, 1939):

Section 311 of the Revenue Act of 1928, Chap. 852, 45 Stat. 791, 26 U.S. C.A. § 311, imposed no new obligation upon a transferee of property of a corporation but merely permitted, by summary proceeding, collection from him of his existing liabilities in law or equity. The nature and extent of a transferee's liability must be determined by the settled principles of the common law or Federal or local statutes.

■ It is generally held that a transferee may relieve himself of liability to respond to creditors of his transferor by reconveying the property to the transferor prior to the institution of proceedings against him by creditors of the transferor. Glenn, Fraudulent Conveyances and Preferences, rev. ed., § 57; 37 Am.Jur.2d, Fraudulent Conveyances, §

156. It appears that such rule is followed in the State of Florida. Cook v. Katiba, Fla., 190 So.2d 309.

Applying that rule, the courts have uniformly held that transferee liability may not be imposed upon a transferee who reconveyed the property in question to the transferor before any notice of claim of transferee liability was asserted by the government. Ginsberg v. C. I. R., 305 F.2d 664 (C.A.2, 1962); United States v. Altmark, 331 F.Supp. 1346 (E.D.N.Y., 1971); Louise Noell, 24 T.C. 329 (1955); cf. McCann v. C. I. R., 87 F.2d 275 (C.A.6, 1937). The basis of this rule is set forth in the *Ginsberg* ruling, wherein the court stated:

The theory underlying this rule is that once proceedings have been instituted by creditors, the transferee is under notice that he is being held liable and that a further transfer is at his peril. We believe that decision is correct and follow it. If a creditor goes to the trouble of instituting proceedings, he should not be compelled to dismiss them and begin anew against the one primarily liable, particularly since a transferee normally has, as the petitioner here did, ample opportunity to extricate himself [by reconveyance] before institution of proceedings. 305 F.2d 668–669.

■ This Court cannot accept the plaintiff's argument, framed upon the decision in *Louis Noell, supra*, that knowledge of the transferor's tax problems is sufficient to impose liability upon a transferee, notwithstanding a reconveyance of the subject property. It appears to the Court that when the decisions in this area speak of knowledge they are referring to knowledge that a creditor of the transferor was making a claim upon the assets while in the hands of the transferee, and not knowledge of the transferor's financial and/or tax problems in general. Such a view necessarily follows from the holding in *Louise Noell* that:

We believe the correct rule to be that once the transferee has been given

*proper notice that the creditors of transferor are holding the transferee liable* he makes further transfers at his peril. (emphasis added) 40 T.C. 229, 230.

■ Upon the government's admission that no notice of a claim of transferee liability was given to defendants prior to the sale of the real property and the reconveyance of the proceeds of sale to Milton Brand and the further admission that the filing of this action was the first attempt at collection from the defendants, it necessarily follows that no transferee liability can be imposed upon the defendants. The defendants' motion for summary judgment will be granted.