BENJAMIN AND LILLIAN BELLIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MEYER AND EVA THOMAS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2159-74, 2177-74.    Filed December 31, 1975.

*Frank L. Schiavo* and *Robert I. Tuteur,* for the petitioners.
*Gerald V. May, Jr.,* for the respondent.

OPINION

DRENNEN, *Judge:* Petitioners Benjamin and Lillian Bellin and petitioners Meyer and Eva Thomas presently reside in Philadelphia, Pa. Both the Bellins and the Thomases will hereafter be referred to collectively as petitioners.

Respondent determined that petitioners were liable as transferees of the assets of Hamilton Homes, Inc., transferor, for deficiencies in income tax and addition to tax under section 6651(a), I.R.C. 1954,[1] as follows:

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

|  | Deficiency | Addition to tax under sec. 6651(a) |
|---|---|---|
| FYE Feb. 28, 1969 | $19,012.11 | --- |
| FYE Feb. 28, 1970 | 307.13 | --- |
| Mar. 1, 1970, to May 29, 1970 | 4,329.45 | $1,082.36 |
|  | 23,648.69 | 1,082.36 |

The sole issue for our determination is whether or not the [pet]itioners are liable for the above amounts, plus interest, as [tra]nsferees of the assets of Hamilton Homes, Inc., pursuant to [sec]tion 6901.

Petitioners do not contest the existence or the amount of [lia]bility of Hamilton Homes, Inc., nor do they contest the [am]ount of their liability, either at law or in equity, if they are [fou]nd to be transferees of Hamilton Homes, Inc. Furthermore, [pe]titioners concede that, if they are found to be transferees, the [sta]tute of limitations does not bar the assessment of liability [ag]ainst them.

All of the facts are fully stipulated and the stipulation of facts, [to]gether with associated exhibits attached thereto, are incor[po]rated by this reference.

Hamilton Homes, Inc., hereinafter referred to as transferor, [wa]s a New Jersey corporation having its principal place of [bu]siness at 331 Tilton Road, Northfield, N.J.

Petitioners, as buyers, entered into an "Agreement for Sale of [St]ock of Hamilton Homes, Inc.," with Max Gurwicz, Helena [Gu]rwicz, and Herzel Gurwicz, as sellers. The agreement provided [fo]r the petitioners' purchase of all of the issued and outstanding [st]ock of Hamilton Homes, Inc., for a price of $800,000, payable as [fo]llows:

| | |
|---|---|
| (1) 8-percent note secured by first mortgage to Max Gurwicz and Herzel Gurwicz | $652,500 |
| (2) 8-percent note secured by second mortgage to Max Gurwicz and Son, Inc. | 87,500 |
| (3) Cash at closing | 60,000 |
| Total consideration for stock | 800,000 |

The assets of the transferor consisted of a 250-unit hotel [k]nown as the Jefferson Hotel located at 136 South Kentucky [A]venue, Atlantic City, N.J., the hotel furnishings including [fu]rniture, china, glass, silverware, and supplies, and the 1 acre of

land, with a parking lot, on which the hotel was located. The fa market value of these assets on May 29, 1970, was $800,000.

On May 29, 1970, the stock-purchase transaction was close petitioners received all of the stock of the transferor in return f the above-recited consideration. On that same day, petitione dissolved and completely liquidated the transferor pursuant section 331 and surrendered said stock in return for all of th assets of the transferor. Petitioners subsequently formed partnership known as M.B. Co.-Jefferson Hotel for the so purpose of operating the hotel.

The net value of the assets received by petitioners liquidation of the transferor was in excess of the deficiencies income tax and the addition to tax determined by respondent be due from the transferor plus interest thereon.

Paragraph 18 of the Agreement for Sale of Stock of Hamilto Homes, Inc., provided that "Sellers agree to absolutely an completely indemnify Buyers for and from any and all liabiliti to which the Corporation [Hamilton Homes, Inc.] may be subje which were incurred prior to closing whether asserted or no * * * including but not limited to liabilities for taxes whether not [sic] Federal, State or local."

Transferor had filed its tax returns, Forms 1120, for year ended February 28, 1969, February 28, 1970, and for the taxabl period March 1, 1970, through May 29, 1970. Those return reflected taxable income (loss) of $94,622, $20,710, and ($1,117 respectively.

Subsequent to the liquidation of Hamilton Homes, Inc., bu prior to the expiration of the period during which respondent i permitted to assess deficiencies, petitioners executed Forms 87 and 872A extending the period for assessment of tax due for th pertinent years and period in question against Hamilton Homes Inc. And on or before December 14, 1971, petitioners execute Form 2045, "Transferee Agreement," in which they agreed t assume and pay all Federal income taxes due and payable from transferor for the years and period in question, to the extent o their liability at law or in equity as transferees within th meaning of section 6901.

On June 22, 1972, respondent, after an audit of the transferor' returns for the years ended February 28, 1969, February 28 1970, and period March 1 through May 29, 1970, sent 30-day letters (Forms L-197A) to each of petitioners proposing

deficiencies and additions to tax totaling $33,925.39. Petitioners then filed protests with respondent contesting the amount of the proposed deficiencies and additions which resulted in revised audit findings of total deficiencies and additions of $24,731.

Petitioners, in accordance with the terms of the Agreement for Sale of Stock and the first mortgage executed in compliance therewith, made principal payments during the calendar years 1970 through 1972. And during the years 1970 and 1971, petitioners made principal payments in accordance with the terms of said agreement and the second mortgage also executed in compliance therewith. However, on September 10, 1972, petitioners defaulted in payment on the second mortgage at which time $466,500 was owing on the first mortgage and $67,500 was outstanding on the second mortgage.

Petitioners Meyer and Eva Thomas, on February 8, 1973, and petitioners Benjamin and Lillian Bellin, on March 6, 1973, transferred all of the assets received from transferor to Gurwicz "N" Corp. to release the security for the debt evidence by the aforementioned mortgage notes. Gurwicz "N" Corp. is a New Jersey corporation whose stock is owned by Max Gurwicz, Helena Gurwicz, and Herzel Gurwicz, the same parties who sold the stock of transferor to petitioners. At the time of the transfer to Gurwicz "N" Corp., the assets had a fair market value of $800,000.

On December 28, 1973, respondent sent to petitioners, by certified mail, a notice of transferee liability determining deficiencies in income taxes of the transferor in the combined amount of $23,648.69 and an addition to tax of $1,082.36 for the taxable years ended February 28, 1969, February 28, 1970, and the taxable period March 1, 1970, to May 29, 1970.

Petitioners filed timely petitions to this Court seeking a redetermination of the aforesaid liability in response to which amended answers thereto were filed placing in issue all the material allegations of the petitions.

No part of the deficiencies in income tax or addition to tax due from the transferor together with interest thereon has been paid.

The only issue left for our decision in this fully stipulated case is whether the petitioners are in fact liable at law or in equity for the amount determined by respondent.

Section 6901 establishes a method for the collection of tax liability from a transferee of property of the taxpayer who incurred the liability. Generally, the same procedures apply for

the collection of taxes from a transferee as are provided in the assessment and collection of taxes from the taxpayer himself. Sec. 6901(a). See secs. 6212, 6501, 6503. Subsection (a)(1)(A)(i), pertinent herein, authorizes the assessment and collection of a transferor's income tax liability from a transferee, to the extent of the transferee's liability therefor either at law or in equity. Section 6901 has been held to be solely procedural, thus requiring resort to applicable State law to determine the existence and extent of said transferee's liability. *Commissioner v. Stern,* 357 U.S. 39 (1958). Pursuant to statute, in this Court the burden is on respondent to show that a petitioner is liable as a transferee of property, but not to show that the taxpayer was liable for the tax. Sec. 6902. As a result of the stipulation of facts, there is no question of the amount or the existence of the transferor's liability. Consequently, for respondent to prevail he must establish only that under New Jersey law, the State of incorporation of the transferor, the petitioners are liable for the taxes, addition to tax, and interest at issue herein, either at law or in equity.

Respondent contends that by his amended answer and the stipulation of facts with exhibits, he has met his burden of proving petitioners' liability both at law and in equity. Petitioners dispute this contention. However, petitioners' only argument relates to their alleged liability in equity and does not counter respondent's contention of liability at law.

Section 6901 is clear; if a transferee is liable (under State law) *either* at law *or* in equity the Commissioner may assess and collect such liability. We hold that respondent has established petitioners' liability at law and thus find for the respondent.

The parties have stipulated that the petitioners each executed Form 2045, "Transferee Agreement," on or before December 14, 1971. Form 2045 provides, in pertinent part, as follows:

> In consideration of the Commissioner of Internal Revenue not issuing a statutory notice of deficiency to and making an assessment against the above-named transferor [Hamilton Homes, Inc.], the undersigned, as transferee of assets received from the above-named transferor, assumes and agrees to pay the amounts of any and all Federal income or profits taxes finally determined or adjudged as due and payable by such transferor for the taxable year(s) ended 2/28/69, 2/28/70 and 5/29/70, to the extent of the liability at law or in equity as transferee within the meaning of section 6901 of the Internal Revenue Code of 1954 and corresponding provisions of prior internal revenue laws.

FURTHER: The undersigned agrees, in the absence of prior written consent of the Commissioner of Internal Revenue, not to sell, transfer, or assign without adequate consideration all or any substantial portion of its assets; and * * *

By executing this agreement petitioners conceded that they received assets of Hamilton Homes, Inc., and as transferees, in consideration for respondent's promise not to issue a statutory notice of deficiency to said transferor, they assumed and agreed to pay the liability at issue herein, to the extent of their liability at law or in equity. On December 14, 1971, the period of limitations for the assessment of transferor's tax liability for the periods in question had not expired. Sec. 6501(d). Therefore, respondent still possessed statutory authority to issue a notice of deficiency against transferor. Sec. 6212. Respondent's forbearance from issuing such notice against the transferor served as adequate consideration to bind the petitioners to their agreement, and they are estopped from denying their liability. We have previously so held in *Turnbull, Inc.* (Supplemental Opinion), 42 T.C. 582, 587-588 (1964), affd. 373 F. 2d 91 (5th Cir. 1967), cert. denied 389 U.S. 842 (1967),[2] and continue to follow that holding.

Once these transferee agreements were entered into, the only remaining facts necessary to establish transferee liability at law and the extent thereof were:

(1) That the transferor was liable for the taxes alleged;

(2) That the value of the assets received by the transferees at the date of the transfer was in excess of the alleged liability; and

(3) That the period of limitations within which the transferee liability may be assessed had not expired. Here, the petitioners have stipulated to the existence of the transferor's liability, to the fact that the assets received by them exceeded the amount of taxes, addition to tax, and interest to be imposed, and to the fact that the statute of limitations does not bar assessment of their liability. Petitioners have thus stipulated the existence and the extent of their liability and accordingly must pay the taxes, addition to tax, and interest owed.

Having decided that petitioners are transferees liable at law, we need not consider the question of their liability in equity. However, in the interest of fully considering petitioners'

---

[2] See also *Samuel Napsky*, T.C. Memo. 1965-284, affd. 371 F. 2d 189 (7th Cir. 1966).

argument, we shall briefly discuss this issue which we also find in favor of respondent.

It is a well-established principle of decisional law that an indebted corporation cannot be stripped of its assets without providing for creditors. The shareholders will be deemed to hold those assets received in liquidation subject to an equitable lien in favor of the creditors and they may be compelled, in appropriate proceedings, to discharge unpaid corporate taxes. See *Phillips v. Commissioner,* 283 U.S. 589 (1931); 19 Am. Jur. 2d, secs. 1547 and 1553.

New Jersey Stat. Ann. sec. 14A:12-16 [3] provides that on dissolution of a corporation the shareholders are entitled to the assets that remain after the payment or provision for payment of all creditors' claims. This is the correlative of the trust fund theory. As stated in *Trustees of Sea Isle City Realty Co. v. First Nat. Bank,* 87 N.J. Eq. 84, 99 A. 929 (1917):

> the general scope of these several sections of the statute * * * disclose a legislative intent * * * that at dissolution the assets of the corporation become a trust fund for the equal benefit of all creditors * * * and for the benefit of the stockholders after the payment of all debts of the corporation * * * [4]

While the statute does not specifically impose liability on the shareholders for the corporate debts, the New Jersey courts have articulated the trust fund theory in finding assignees of the assets of a dissolved corporation liable for the debts of the dissolved corporation, to the extent of the value of the assets assigned. *American Dock & Improvement Co. v. Trustees for Support of Public Schools,* 39 N.J. Eq. 409 (1885); *Harris v. Esperanza Mining Co.,* 91 N.J. Eq. 163, 109 A. 826 (1920); *Kiernan v. Kahn Davis, Inc.,* 132 N.J. Eq. 245, 28 A. 2d 66 (1942); *New Jersey Title Guarantee & Trust Co. v. Berliner,* 136 N.J. Eq. 162, 40 A. 2d 790 (1945).[5] In *City of Newark v. Jos. Hollander, Inc.,* 136 N.J. Eq. 539, 42 A. 2d 872 (1945), on facts quite similar to

[3] 14A:12-16. Distribution to shareholders

Any assets remaining after payment of or provision for claims against the corporation shall be distributed among the shareholders according to their respective rights and interests. Distribution may be made either or both cash and kind.

[4] The statutes referred to were the corporate dissolution statutes prior to amendment in 1968. While the amended statute changed the statutory scheme that previously made the directors of a dissolving corporation trustees of its assets, we do not believe this changed the equitable principle that assignees or transferees of the assets of a dissolved corporation hold those assets in trust for the benefit of the corporate creditors.

[5] Unlike in the cited case, there is no question in this case that the dissolved corporation owed the debt (taxes) and that collection thereof was not barred by the statute of limitations.

ose in this case, the Court of Chancery of New Jersey held the
ockholder-distributees of a dissolved corporation liable for city
xes owed by the dissolved corporation on the trust fund theory
d by equitable estoppel, saying, "I think that in equity the trust
broad enough to cover this tax claim."

Under the trust fund theory, to establish a prima facie case for
titioners' liability in equity respondent must prove: (1) That
sets were transferred to the petitioners without consideration
for an inadequate consideration; (2) that, at the time of the
ansfer, the transferor was insolvent or was rendered insolvent
said transfer; (3) that the transferred assets were valuable and
e fair market value at the date of transfer; and (4) that the
spondent has made every reasonable effort to collect from the
ansferor the sums due. *Bartmer Automatic Self-Service
aundry, Inc.,* 35 T.C. 317, 322 (1960).[6]

We find that the respondent has met his burden in proving
bility in equity. Petitioners have stipulated that they received
sets of the transferor in return for which they gave nothing but
eir stock in the transferor. Therefore, upon the liquidation and
ssolution of the transferor by the petitioners, the assets of the
ansferor were deemed transferred without any consideration.
e *Coca-Cola Bottling Co. of Tucson, Inc.,* 37 T.C. 1006 (1962).
hat the corporation was indebted at the time of liquidation and
us rendered insolvent by the distribution of all its assets cannot
e questioned. The transferor's tax liability, even though not
own or contingent at the date of transfer, must be considered in
etermining whether the transferor was insolvent. *J. Warren
each,* 21 T.C. 70 (1953); *City of Newark v. Jos. Hollander, Inc.,
upra.* And the shareholder-transferees are retroactively liable for
e corporate taxes for the year of transfer, and prior years, and
nalties and interest in connection therewith, to the extent of
sets they received in liquidation. *Coca-Cola Bottling Co. of
ucson, Inc., supra* at 1013; *J. Warren Leach, supra* at 75; *R. E.
Vyche,* 36 B.T.A. 414, 419 (1937); *Scott v. Commissioner,* 117
F. 2d 36 (8th Cir. 1941). Also by stipulation, the extent of
liability is not at issue; the transferees have stipulated that the
value of the assets received on liquidation of the transferor was
$800,000. Although it is generally required that the respondent
show that attempts were made to collect the tax liability from
the transferor since the liability of the transferees is secondary,

---

[6] See also *Samuel Napsky, supra.*

684

*Anne Gatto,* 20 T.C. 830 (1953), this requirement has been h
to be unnecessary in a situation such as the one at bar where
transferor has been liquidated and any attempt to collect
liability from it would be futile. *Coca-Cola Bottling Co.*
*Tucson, Inc., supra* at 1013, and cases cited therein.

Petitioners, having abandoned the primary theory [7] contair
in their petitions, allege on brief that because th
"retransferred" the assets received by Hamilton Homes, I
prior to the issuance of the notice of transferee liability
respondent, they are no longer liable as transferees.

Petitioners rely primarily on *Ginsberg v. Commissioner,* 30£
2d 664 (2d Cir. 1962), affg. 35 T.C. 1148. Petitioners are corr
that a number of cases hold that a transferee can purge a trans
tion in defraud of creditors of fraud by retransferring the asset:
the transferor. See *Brooks v. Goldberg,* 86 N.J. Eq. 462, 99 A. £
(1916); *Ruth Mendelson,* 52 T.C. 727 (1969); *United State*
*Brand,* 346 F. Supp. 279 (N.D. Ohio 1972). This principle
established by this Court in *Fada Gobins,* 18 T.C. 1159 (195
affd. per curiam 217 F. 2d 952 (9th Cir. 1954). In that case
declined to find transferee liability, with regard to property
transferee returned to the transferor, on the rationale that
return of the property by the transferee, to the extent of
property so returned, left the transferor's creditors, including
United States, in the same position they were in prior to
original transfer. This principle and the rationale therefor
recognized in *Louise Noell* (Supplemental Opinion), 24 T.C. ;
(1955), but we limited that holding to situations where
reconveyance occurred prior to the issuance of the notice
deficiency. We stated in that opinion at page 330:

We believe the correct rule to be that once the transferee has been given pro
notice that the creditors of the transferor are holding the transferee liable
makes further transfers at his peril.

In *Robert Ginsberg,* 35 T.C. 1148 (1961), we found that he
retransfer of the assets to the transferor was not culminated until
after issuance of the notice of transferee liability, and held the
transferee liable for the transferor's taxes. In *Ginsberg v.*
*Commissioner, supra,* relied on by petitioners, the Court of
Appeals affirmed this Court, saying, at page 668: "The theory

[7] In the petitions it was alleged that the liquidation of the corporation was in substance a
liquidation by the former shareholders and a sale of the assets to petitioners; therefore, the
former shareholders are properly the transferees of the assets of the corporation.

underlying this rule is that once proceedings have been instituted by creditors, the transferee is under notice that he is being held liable and that a further transfer is at his peril."

In the above cases the courts were not required to determine exactly what sort of notice to the transferee was required because the retransfers were made after issuance of a notice of deficiency and transferee liability and it was recognized that such notice was tantamount to institution of proceedings by a creditor and was thus sufficient. The petitioners here, having retransferred the property subsequent to receipt of a "thirty-day letter" but prior to issuance of the notice of transferee liability, contend that we must here decide whether the issuance of the "thirty-day letter" was sufficient to bring the limitation into play. Petitioners claim that "institution of proceedings" against the transferees is required and that issuance of the "thirty-day letter" does not constitute institution of proceedings.

Petitioners' argument raises several interesting questions, but we need not answer them because we conclude that the circumstances in this case do not bring it within the rationale of the *Gobins, Ginsberg,* and other cases relied on by petitioners.

The basic rationale of the cases which recognize that a transferee may purge the transaction of fraud by retransferring the assets received to the transferor is that the transferor's creditors are then placed in the same position they were in before the transfer. Such is not the case here, and the principle is inapplicable.

In this case the petitioners purchased the stock of Hamilton Homes, Inc., from Max, Helena, and Herzel Gurwicz and thereafter liquidated the corporation, receiving all of its assets as a liquidating distribution. The transfer of assets which generated the transferee liability now sought to be imposed upon petitioners did not result from the purchase and sale of stock of Hamilton Homes, Inc., but rather from the distribution of the assets from Hamilton Homes, Inc., upon liquidation. After issuance of the "thirty-day letter" and execution of the transferee agreement, petitioners transferred the assets it received from Hamilton Homes, Inc., to another corporation owned by the Gurwiczes, Gurwicz "N" Corp., a separate taxable entity.[8] This did not put the creditors of the transferor in the same position

---

[8] The record does not disclose whether the stock in Gurwicz "N" Corp. was held in the same proportions by the Gurwiczes as was the stock of Hamilton Homes, Inc.

they were in prior to the transfer to petitioners. The transferor, Hamilton Homes, Inc., was no longer in existence and had no assets before or after the retransfer. Respondent is clearly not required to attempt to collect this tax from Gurwicz "N" Corp., which would at best be a transferee of a transferee. *Coca-Cola Bottling Co. of Tucson, Inc., supra; Phillips v. Commissioner, supra; John H. Humbert,* 24 B.T.A. 828 (1931). Petitioners were clearly on notice prior to the transfer, as a result of the 30-day letters sent to them by respondent and the transferee agreement they were asked to sign, that respondent would attempt to collect the tax from them. See *Louise Noell, supra* at 330. Petitioners also recognized their potential tax liability prior to the purchase of the transferor's stock and took the precaution, in paragraph 18 of the Agreement for Sale of Stock of Hamilton Homes, Inc., of requiring the Gurwiczes to indemnify them from any and all corporate tax liability subsequently imposed upon them. They may now seek to enforce their contractual rights, but respondent is not required to litigate such rights or attempt to collect from the Gurwiczes. *Coca-Cola Bottling Co. of Tucson, Inc., supra.*

*Decisions will be entered for the respondent.*