JACK WILLIAMSON, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williamson v. Commissioner
Docket No. 19476-89
United States Tax Court
T.C. Memo 1993-258; 1993 Tax Ct. Memo LEXIS 264; 65 T.C.M. (CCH) 2941; June 14, 1993, Filed *264 Decision will be entered under Rule 155. For petitioner: James P. Knight, Jr., and James T. Knight. For respondent: Helen C. T. Smith. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Pursuant to a notice of transferee liability, respondent determined that petitioner is liable for unpaid Federal income taxes in the amount of $ 291,645, plus interest, as the transferee of assets of James Williamson (James) and Vera Williamson (Vera). James and Vera are sometimes hereinafter referred to as the transferors. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, and the holding by this Court that the transferors are liable for deficiencies and additions to tax for the years 1980, 1981, and 1982, Williamson v. Commissioner, T.C. Memo. 1993-246, the only issues remaining to be decided by the Court are: (1) Whether petitioner is liable as the transferee of assets of James and Vera Williamson under Mississippi State law and section 6901; and (2) If so, whether petitioner *265 is also liable for interest on his transferee liability and the extent of such liability for interest. FINDINGS OF FACTS Some of the facts have been stipulated and are so found. The stipulation and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Ethel, Mississippi, at the time he filed his petition in this case. Petitioner and James are twin brothers, and their residences are located across the road from each other. They have lived across the road from each other all of their adult lives. The transferors and their son, Terry, were defendants in a criminal tax trial in August of 1988. Their attorneys' fees totaled $ 56,000, of which the transferors paid half and Terry paid half. The transferors paid the fees at the time they hired the attorneys to represent them, prior to their criminal trial. As of July 1988, the transferors had paid these fees and did not owe any attorneys' fees for any services provided to them in their criminal trial. The transferors had different lawyers who represented them in regard to their civil tax matters, and the record does not contain any information as to the fees for those legal services. *266 1. The Transfers
On July 21, 1988, the transferors conveyed to petitioner five parcels of real property situated in Attala County, Mississippi. The five parcels included 40 acres of vacant "cutover timberland", a tenant dwelling situated on 4.82 acres of land, the transferors' residence and a store (Williamson's Store) situated on approximately 50 acres of land, 2 additional acres of land adjacent to the 50 acres, and Terry's house situated on 2 acres of land. [1] The total fair market value on July 21, 1988, of all of the property transferred by the transferors to petitioner was $ 207,000. *267 On July 22, 1988, petitioner conveyed to the transferors approximately 79 acres of unimproved real property situated in Winston County, Mississippi. The Winston County property is approximately 30 miles away from the residence that the transferors transferred to petitioner. There is no house on the Winston County property, although there had been a house there at one time and the land had been farmed at one time. The fair market value of the Winston County property on the date of the transfer was $ 31,600. Deeds conveying the above properties were filed for record in the appropriate Mississippi Chancery Courts. At the time of the transfers, none of the properties was subject to a mortgage, deed of trust, or other encumbrance. At the time of the transfers, the value of the property received by petitioner from the transferors exceeded the value of the property he transferred to them by $ 175,400. [2]
*268 2. Assets of the Transferors Following the Transfers
At the time of the transfers, Vera owned a parcel of property in Carroll County, Mississippi, that she had purchased sometime between 1982 and 1984 for $ 3,300. She had purchased the property so that she could obtain a permit to buy and sell beer in Carroll County. She used the vacant building (an abandoned store) on the property to store small quantities of beer. At the time the other properties were transferred between petitioner and the transferors, this Carroll County property was appraised for tax purposes at $ 8,700. Prior to July 12, 1988, the transferors held two certificates of deposit (CD's) from the Kosciusko branch of the Citizens National Bank of Meridian (Citizens Bank). The CD's had face values of $ 50,000 and $ 60,000, exclusive of interest. The transferors purchased the $ 50,000 CD on December 3, 1986. On May 5, 1987, Vera borrowed $ 26,000 at 8.5 percent interest from Citizens Bank. The loan was evidenced by a 1-year promissory note and secured by the $ 50,000 CD. When the note became due, it was renewed for an additional year and continued to be secured by the $ 50,000 CD. The transferors and *269 Terry purchased the $ 60,000 CD on March 25, 1988. On July 12, 1988, the transferors cashed the above two CD's. After the bank charged early withdrawal penalties, the proceeds from the CD's, including interest, totaled $ 108,484.63. A portion of the proceeds in the amount of $ 26,465.89 was applied to the payment of the promissory note and accrued interest then due to Citizens Bank. The remaining $ 82,018.74 was disbursed to the transferors in the form of a cashier's check payable to them. James cashed the cashier's check on July 28, 1988, at which time Citizens Bank filed a Currency Transaction Report (Form 4789). The transferors maintained the following bank accounts in Citizens Bank: account number 680-413-2, held in the name of Williamson's Store; account number 383-074-0, jointly held by Vera and Lynn Williamson; account number 382-564-3, held in the name of Vera Steed; and account number 382-930-6, held in the name of Vera Williamson. On July 12, 1988, Vera withdrew $ 47,219 from Citizens Bank (account number 382-564-3) and received a bank check in that amount. On July 13, 1988, Vera returned the bank check to Citizens Bank in exchange for another check in the amount *270 of $ 47,000, plus $ 219 cash. The $ 47,000 check was cashed on July 26, 1988, at which time Citizens Bank filed a Currency Transaction Report (Form 4789). The record does not indicate the balances in the Citizens Bank accounts on July 21, 1988. On August 25, 1988, however, in response to levies served upon it by the Internal Revenue Service (IRS), Citizens Bank paid $ 3,800 from account number 383-074-0, $ 276.35 from account number 382-930-6, and $ 5,089.15 from account number 680-413-2, for a total of $ 9,165.50. On July 21, 1988, Vera and Terry each owned a 50-percent interest in the grocery store. [3] *271 On that date, the store had an inventory of merchandise consisting of beer, groceries, ice, gasoline and oil. [4] After the transferors transferred the real estate to petitioner, Terry and his wife thereafter operated the store. After Terry was incarcerated, Terry's wife continued to operate the store. On July 21, 1988, the transferors owned at least one Lincoln Continental automobile and a pickup truck. [5] The record does not indicate the value of these vehicles. Except for their Federal income tax liability, the transferors owed no other debts on July 21, 1988. *272 Vera was imprisoned on July 7, 1989, and released on October 13, 1989. James was imprisoned for 17 months and released on December 10, 1990. Upon their respective releases from prison, the transferors returned to live in the residence in Attala County, Mississippi, that they had transferred to petitioner. Except for their periods of incarceration, the transferors had lived in that house for over 25 years. At the time of the trial in this case, the transferors had not built a house upon, or otherwise improved, the Winston County property that petitioner had transferred to them, and they continued to live in the house they had transferred to petitioner. [6]
3. Collection Actions Taken by *273 Respondent
Revenue Officer Jeff Tomaw (Tomaw) was first assigned the transferors' account for collection of the taxes, additions to tax, and interest on August 22, 1988. [7] *274 At the time Tomaw was assigned the case, no one had formally made demand for payment of the taxes or given notice of the jeopardy assessment to the transferors. On August 23, 1988, a special agent, Danny Thomas (Thomas), and a revenue officer, Lee Sanford (Sanford), unsuccessfully attempted to serve the notice and demand papers on James at the Federal courthouse in Aberdeen, Mississippi. [8] Thomas, Sanford, and Tomaw then unsuccessfully attempted to serve the final demand on the transferors at their residence and the store in Ethel, Mississippi. Being unable to serve the papers personally on the transferors, Tomaw sent the papers to the transferors by certified mail on August 23, 1988. On August 23, 1988, Tomaw also served a levy notice on Citizens Bank for all funds on account, in the transferors' names and filed Federal tax liens against their property in Attala County. On August 24, 1988, Tomaw checked the real property records in the Attala County courthouse. During the search, he discovered that the transferors had transferred the parcels of property to petitioner on July 21, 1988. Tomaw inspected four of the parcels, searched the public records for deeds of trust or other encumbrances against the properties, and obtained surveys and the tax assessor's valuations of the properties. On August 25, 1988, Citizens Bank complied with the levy on the transferors' accounts and paid respondent a total of $ 9,165.50, as indicated above. The levied funds were applied to the transferors' 1980 tax liability. On August 25, 1988, after conferring with the IRS District Counsel's office, Tomaw caused the filing of a notice of Federal tax lien against "Jack Williamson as the nominee/transferee of James *275 and Vera Williamson" in the Attala County Chancery Court, thereby encumbering title to the properties petitioner had received from the transferors. On August 26, 1988, Tomaw served a summons on the bank to obtain all information on the transferors' accounts and seized the safe deposit box rented by Vera and Terry. On August 26, 1988, respondent made a jeopardy assessment against the transferors for tax, penalty, and interest in the following amounts: Year
Tax
Penalty
Interest Total
1980
$  43,699
$  21,850
$  60,047.06
$ 125,596.06
1981
119,385
59,693
133,853.42
312,931.42
1982
151,430
113,573
137,068.59
[1] 460,611.59
Tomaw filed the notice of Federal tax lien against petitioner as the nominee/transferee of the transferors in order to prevent petitioner from further transferring the property. On August 26, 1988, Tomaw served petitioner with a copy of the notice along with a summons for *276 proof of any consideration petitioner paid to the transferors for the property. On August 29, 1988, Tomaw filed a notice of Federal tax lien in Winston County against the property petitioner had transferred to the transferors. Collection officers routinely use Collection Information Statements to solicit from taxpayers information about a taxpayer's financial status. The taxpayers are requested to complete and sign the statement. On August 31, 1988, Tomaw requested, through the transferors' civil tax counsel, the transferors' financial statement. Since the transferors were represented by counsel, Tomaw could not deal directly with them. No financial statement was ever furnished by the transferors or their counsel. Tomaw filed notices of Federal tax liens against the transferors' property in Carroll County District 2 on September 14, 1988 and in Carroll County District 1 on September 15, 1988. Tomaw became a group manager in September 1988, and was transferred from the Jackson, Mississippi, office to the Tupelo, Mississippi, office. As a result, the transferors' account was assigned to Revenue Officer Virginia Hendrix (Hendrix). She and Tomaw worked together briefly before *277 his transfer became effective. On September 23, 1988, Tomaw and Hendrix went to the Carroll County courthouse in Vaiden, Mississippi, and conducted a search for records of property belonging to the transferors. Hendrix thereafter took over the collection efforts for IRS. Hendrix had previous experience in seizing and selling real property in Mississippi. During her 22-year career with IRS, Hendrix has seized and sold approximately 25 parcels of real property, including property located in isolated rural areas. It has been her experience that IRS rarely receives fair market price for property seized and sold for payment of taxes. Hendrix located and viewed the transferors' Carroll County property. Because she thought the property had little or no value and that it would have been difficult to sell, she did not attempt to collect on that property. On September 27, 1988, Hendrix requested, through the transferors' counsel, that the transferors complete a Collection Information Statement disclosing their financial status. She renewed her request on September 30, 1988, and again on October 5, 1988. The transferors did not comply with those requests. In October 1988, IRS revenue *278 officers ceased their attempts to collect the taxes, additions to tax, and interest from the transferors. By that date, the transferors had petitioned this Court for a redetermination of the taxes and additions (docket No. 32345-88). Also the IRS had filed notices of Federal tax liens against the transferors' property, as well as petitioner's property, and could not locate any other assets or property belonging to the transferors. On January 18, 1989, IRS officers opened the safe deposit box with the transferors' consent. When opened, the safe deposit box was empty. On April 21, 1989, Hendrix recommended that transferee liability be asserted against petitioner. At that time, Hendrix prepared a list of properties transferred between petitioner and the transferors. She did not prepare a complete analysis of the transferors' financial condition because they had not provided her with the requested Collection Information Statement. On May 23, 1989, respondent issued to petitioner a notice of transferee liability indicating that the transferors had unpaid income tax assessments for 1980, 1981, and 1982 totaling $ 899,139.01. Of that amount, respondent proposed to assess $ 291,645, *279 plus interest, against petitioner as transferee of the transferors' assets. In Williamson v. Commissioner, T.C. Memo. 1993-246, this Court held that the transferors are liable for (1) deficiencies in the amounts of $ 12,479 for 1980, $ 23,328 for 1981, and $ 34,787 for 1982; (2) additions to tax under section 6653(b) in the amounts of $ 6,239 for 1980, and $ 11,664 for 1981; and (3) additions to tax for 1982 under section 6653(b)(1) in the amount of $ 17,393, under section 6653(b)(2) in the amount of 50 percent of the interest due on $ 34,787, and under section 6661 in the amount of $ 8,697. The parties agree that petitioner's liability does not exceed the amount of the transferors' liability as determined by this Court. The parties further agree that petitioner's liability is limited to the difference, on the date of the transfers, between the fair market value of the property the transferors transferred to petitioner and the fair market value of the property he transferred to the transferors. We find such difference to be $ 175,400. The parties dispute whether petitioner, as a transferee, is liable for interest on any transferee liability. OPINION
*280 I Transferee Liability
Section 6901 permits respondent, in certain circumstances, to proceed directly against a transferee of assets for the assessment and collection of the unpaid income tax liability of the transferors. Phillips v. Commissioner, 283 U.S. 589, 592 and n.3 (1931) (discussing the Revenue Act of 1926, ch. 27, sec. 280, 44 Stat. 9, 61, the predecessor to sec. 6901); Mysse v. Commissioner, 57 T.C. 680, 700-701 (1972). Section 6901 neither creates nor defines a transferee's substantive liability but merely provides a procedure by which taxes owed by a transferor may be collected from the transferee. Commissioner v. Stern, 357 U.S. 39, 42-43 (1958); Phillips v. Commissioner, 283 U.S. at 602. The existence and extent of a transferee's substantive liability, at law or in equity, is determined by State law. Commissioner v. Stern, 357 U.S. at 44-45. Thus, State law determines the elements of liability, and section 6901 provides the remedy or procedure to be employed by respondent as the means of enforcing that *281 liability. Ginsberg v. Commissioner, 305 F.2d 664, 667 (2d Cir. 1962), affg. 35 T.C. 1148 (1961). Respondent bears the burden of proving petitioner's liability as a transferee. Sec. 6902; Rule 142(d). Because the transfers in this case took place in Mississippi, transferee liability must be established under Mississippi law. Adams v. Commissioner, 70 T.C. 373, 390 (1978), supplemental opinion 70 T.C. 446 (1978), affd. without published opinion 688 F.2d 815 (2d Cir. 1982). Section 15-3-3 of the Mississippi Code Annotated (1972, 1992 Supp.) provides that: Every * * * conveyance of lands, * * * or of any rent, common or other profit or charge out of the same, * * * had or made and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures, * * * shall be deemed * * * to be clearly and utterly void; * * *.
This fraudulent conveyance provision does not "extend to creditors whose *282 debts were contracted after such fraudulent act, unless made with intent to defraud them". Miss. Code Ann. sec. 15-3-5 (1972). Deeds executed before the debtor-creditor relationship arose and not executed with intent to defraud the creditors in question are not fraudulent conveyances even if unsupported by any consideration. Morgan v. Sauls, 413 So. 2d 370, 374 (Miss. 1982). The Mississippi statute is liberally construed in determining who is an existing creditor and encompasses creditors who have not obtained judgments at law. Allred v. Nesmith, 245 Miss. 376, 149 So. 2d 29, 31 (1963). This Court and the United States Court of Appeals for the Fifth Circuit have held that income taxes become legally enforceable at the time fixed for filing the returns. Hagaman v. Commissioner, 100 T.C.    ,     (1993); cf. In re Ripley, 926 F.2d 440 (5th Cir. 1991). The transferors' returns for 1980, 1981, and 1982 were required to be filed in 1981, 1982, and 1983, long before July 21, 1988, the date of the transfers. Thus, the transferors' income taxes were due on the date *283 of the transfers, and IRS was an existing creditor of the transferors on that date. Mississippi law provides that the validity of a conveyance, as against existing creditors, depends upon its being supported by adequate consideration and being made in good faith. Miss. Code Ann. sec. 15-3-5 (1972). "Either is not sufficient; consideration without good faith plainly does not displace the operation of the statute; and good faith without consideration does not necessarily protect a conveyance." Blount v. Blount, 231 Miss. 398, 412-413, 95 So. 2d 545, 551-552 (1957). Therefore, a conveyance is void as to existing creditors if it is made either without good faith or without adequate consideration. The Mississippi Supreme Court has applied the Uniform Fraudulent Conveyance Act (1918) (UFCA) to determine whether a conveyance is supported by adequate consideration. Barbee v. Pigott, 507 So. 2d 77, 84 (Miss. 1987). The Mississippi Supreme Court stated: Fair consideration is given for property, or obligation, (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good *284 faith, property is conveyed or an antecedent debt is satisfied, (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.
Barbee v. Pigott, 507 So. 2d at 87 n.7 (quoting Unif. Fraudulent Conveyance Act sec. 3, 7A U.L.A. 448 (1918)). This requirement is satisfied if, based on all the surrounding circumstances, the consideration "fairly represents" the value of the property transferred. Id.
On the date of the transfers in this case, the property transferred from the transferors to petitioner had a fair market value of $ 207,000, and the property transferred from petitioner to the transferors (the Winston County property) had a fair market value of $ 31,600. There is support for petitioner's position that, under Mississippi law, an obligation to make future payments or perform future services may provide adequate consideration for a conveyance of property. Patterson v. Adams, 245 So. 2d 194, 197-198 (Miss. 1971). Even if we were to include the $ 20,000 *285 petitioner claims to have promised to contribute to the construction of a house on the Winston County property and some amount for the value of his purported future services in such construction, the value of the property petitioner transferred is still disproportionately small as compared with the value of the property he received from the transferors. See supra notes 2, 6. Thus, the conveyance was not supported by adequate consideration. The Mississippi Supreme Court has held that a transfer of a substantial portion of a debtor's property for nominal consideration or by way of gift is presumptively fraudulent as to existing creditors. Odom v. Luehr, 85 So. 2d 218, 219 (Miss. 1956). In such case, the burden is on the transferee to rebut the presumption by showing that the debtor retained ample property sufficient to satisfy his then-existing legal liabilities. Id.
The fair market value of the five parcels of real property the transferors transferred to petitioner greatly exceeded the value of the property they received (or claim they expect to receive) from petitioner. The record indicates that the five parcels constituted a substantial *286 portion of the transferors' total assets. Therefore, the conveyance to petitioner is presumptively fraudulent, and under Mississippi law, the burden is on the transferee to show that the transferors retained sufficient property to satisfy their tax liability. Petitioner argues that this rebuttable presumption is a procedural matter in State law only, and that the Federal statute imposes the burden of proof on respondent to establish the insolvency of the transferors. We disagree. Respondent has the burden of proving transferee liability under applicable State law. Hagaman v. Commissioner, 100 T.C. at    . Under Mississippi law respondent can prove that the conveyance was fraudulent without proving the insolvency of the transferors. Id. Therefore, unless petitioner demonstrates that the transferors retained sufficient assets to satisfy their tax liability, the conveyance of the property to petitioner is fraudulent with regard to IRS. After transferring the five parcels of real property to petitioner, James and Vera owned the real property (the Winston County property) they received from petitioner, valued at $ 31,600, and the Carroll County property, valued for *287 property taxes at $ 8,700. Although petitioner argues that the value assigned to the Carroll County property is substantially below its fair market value, there is no evidence as to any greater fair market value. There is evidence that IRS would have received little in a tax sale of the Carroll County property, and therefore chose not to try to sell that undeveloped, rural land. In addition to the real property, the transferors owned one or two automobiles, a pickup truck, and their household furniture. There is no evidence as to the value of these items. Vera owned 50 percent of the grocery store business, including the store inventory, receivables, and cash on hand, which items petitioner asserts had a combined value of $ 9,500 to $ 10,600. There is no probative evidence to sustain these figures. See supra note 4. The indication is that Terry and his wife took over operation of the store after July 21, 1988, and possibly even before that date. We find that the transferors did not retain sufficient assets to pay their tax liability including deficiencies, penalties, and interest. Petitioner argues that the bank checks in the amounts of $ 82,018.75 and $ 47,000, payable *288 to the order of James or Vera, should be included in the amount retained by them. The facts taken as a whole and the transferors' whole course of conduct demonstrate that the transferors intended to place a substantial portion of their property beyond respondent's reach and did not intend to make these funds available for the payment of their tax liability. Vera and James cashed in their CD's for these checks which were then cashed, and the record does not show what happened to that cash. Although there is no indication that this cash was transferred to petitioner and, therefore, it is not included in computing the extent of petitioner's transferee liability, nonetheless this missing cash cannot realistically be viewed as an asset retained by the transferors for payment of their tax liability. While the transferors denied that they were trying to place their assets beyond the reach of IRS, the Court is satisfied that that is exactly what they were doing. Petitioner has not met his burden under Mississippi law of showing that the transferors retained sufficient assets to satisfy their tax liability. The transferors transferred the property to petitioner without adequate consideration. *289 Therefore, the conveyances were fraudulent as against IRS, an existing creditor. Petitioner argues that "the transferee assessment" against petitioner is invalid because respondent failed to take adequate legal steps to collect first from the transferors. Petitioner cites no Mississippi statute or case law in support of this proposition. Furthermore, when such requirement applies, respondent is required to demonstrate that "all reasonable efforts were made to collect the tax liability from the transferor before proceeding against the transferee." Sharp v. Commissioner, 35 T.C. 1168, 1175 (1961). Whether respondent has made such effort depends upon the facts of the particular case. Ranno v. Commissioner, T.C. Memo 1990-599. Respondent need not proceed against the transferors if to do so would be a futile act. Coffee Pot Holding Corp. v. Commissioner, 113 F.2d 415 (5th Cir. 1940), affg. a decision of the Board of Tax Appeals dated October 7, 1936; Adams v. Commissioner, 70 T.C. at 390. The facts in this case indicate that respondent took all reasonable *290 steps to try to collect from the transferors during a period when the transferors were making multiple transfers of a substantial portion of their property and reducing their remaining principal assets (the CD's) to cash. The transferors' actions made it virtually impossible for respondent to collect the taxes from the transferors. We hold that petitioner is liable as the transferee of James and Vera Williamson to the extent of $ 175,400. II Liability for Interest
Petitioner's liability for interest from the time of the transfer to the time respondent issued the notice of transferee liability is governed by State law. Interest from the date of the notice of transferee liability to the date of payment is imposed by section 6601. Patterson v. Sims, 281 F.2d 577 (5th Cir. 1960); see also Baptiste v. Commissioner, 100 T.C.     (1993); Estate of Stein v. Commissioner, 37 T.C. 945, 961 (1962). The Court of Appeals for the Fifth Circuit has held that a transferee is liable for interest from the date of transfer to the date of the notice of transferee liability if, under State law, the transferee is liable for *291 additions to the value of the property received either by way of interest or by accounting for rents and profits during the period he held the property fraudulently conveyed. Patterson v. Sims, 281 F.2d at 580. The Mississippi Supreme Court has held that, absent actual fraud on the part of the transferee, the transferee is not liable to account for the value of the use of the property, or for rents or profits derived therefrom. See Holman v. Hudson, 193 So. 628, 629-630 (Miss. 1940). The transferee, however, is not entitled to interest on any consideration he paid. Id. at 630. Furthermore, under Mississippi law, a transferee who has paid valuable, but substantially inadequate, consideration is entitled to reimbursement of (or in this case credit for) the consideration paid, only if the transferee himself intends no fraud and is without notice of the transferor's intent. Blount v. Blount, 231 Miss. 398, 95 So. 2d 545, 560 (1957); see also McLellan v. Commissioner, T.C. Memo. 1975-15. While the lack of credibility *292 of the transferors and petitioner as witnesses in this case leaves the Court with some lingering suspicions, the evidence is not sufficient to show that petitioner participated in the transferors' fraud or that he was aware of the transferors' fraudulent intent. Furthermore, respondent has stipulated that petitioner is entitled to credit for the value of the property he transferred to the transferors. Therefore, we hold that petitioner is not liable for interest prior to the issuance of the notice of transferee liability. Petitioner's liability for interest after the issuance of the notice of transferee liability, however, is not determined under Mississippi law. Patterson v. Sims, 281 F.2d at 580. Petitioner's liability for interest from such date is established under section 6601. Id. at 580-581; Baptiste v. Commissioner, supra.
To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. The description of the properties is derived from an expert appraisal report, the accuracy of which is stipulated to by the parties. The matching of the deeds with the description of the related properties as indicated in the appraisal report differs from the description given by respondent's counsel in her questions to Vera during the trial. Because of the confusion created by counsel's inaccurate description in her questions, the Court has relied solely upon the appraisal report for the description of the properties.↩
2. Petitioner and the transferors testified that petitioner also agreed to assist the transferors in constructing a new residence on the Winston County property and agreed to pay up to $ 20,000 toward such construction. Aside from this self-serving, unpersuasive testimony, there is no evidence to support this claim or to demonstrate that petitioner's promise, if any, was enforceable. The Court did not find petitioner or the transferors to be credible witnesses.↩
3. This interest in the store does not include the underlying real estate that was transferred to petitioner that date. The record does not indicate that Terry ever had any interest in that real estate.↩
4. James testified that the store normally kept on hand a 2-week supply of beer that cost approximately $ 6,000 to $ 7,000 and that the grocery and motor oil inventory had a value of approximately $ 3,000. He further testified that the store normally kept about $ 500 to $ 600 in the cash register and that he normally kept $ 1,000 to $ 5,000 in cash on his person. If there was inventory and cash on hand of $ 9,500 to $ 10,600 in the store, presumably it remained there when Terry and his wife took over operation of the store at that time. The Court is not persuaded by James' testimony, particularly as to any cash he allegedly had on his person. He later admitted he was just guessing about the figures for the inventory and had no basis for those figures.↩
5. The record is unclear as to the vehicles owned by the transferors on July 21, 1988. Vera testified that she owned a 1986 or 1987 Lincoln and that James drove a pickup truck. James testified that he owned a 1986 Lincoln Continental and a pickup truck and Vera owned a 1983 Lincoln Continental.↩
6. The Court did not believe the transferors' testimony that Vera wanted to get away from the area of their old residence because of a police raid that had occurred back in 1984. The Court did not believe the testimony of petitioner and the transferors that they planned to build another home on the Winston County property.↩
7. Tomaw testified that he was assigned the transferors' case on August 22, 1988, but that it was after the jeopardy assessment had been made. The evidence indicates that the assessment was made on August 26, 1988. We conclude that Tomaw was assigned to the case just before and in anticipation of the jeopardy assessment.↩
8. The individual who came out of the courthouse said he was "Jack" and not "James".↩
1. This should be $ 402,071.59, but the jeopardy assessment itself contained this erroneous total.↩